**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIVIL ACTION
DOCKET NUMBER 2010-1161

JODI B. MATT

Plaintiff,

v.

HSBC BANK USA, NATIONAL ASSOCIATION, ON BEHALF OF THE TRUST FUND AND FOR THE BENEFIT OF ACE SECURITIES CORP. HOME EQUITY LOAN TRUST SERIES 2005-HE4 ASSET PASS THROUGH CERTIFICATES, BANK OF AMERICA HOME LOAN SERVICING F/K/A/ COUNTRYIDE HOME LOAN SERVICING, COUNTRYWIDE HOME LOANS SERVICING LP, HSBC BANK USA NATIONAL ASSOCIATION, ACE SECURITIES CORPORATION, WELLS FARGO BANK NATIONAL ASSOCIATION, DEUTSCHE BANK SECURITIES INC., DEUTSCHE BANK NATIONAL TRUST COMPANY, COUNTRYWIDE SECURITIES CORPORATION, THE MURRAYHILL COMPANY, NORTHEAST MORTGAGE COMPANY, NEW CENTURY MORTGAGE CORPORATION, BRAD A. MORRICE, PATTI M. DODGE, DAVID N. KENNEALLY, HARMON LAW OFFICES P.C., STANTON AND DAVIS, and LAURA M. TOMASELLO, ESQ.

Defendants

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER OPPOSITION TO THE DEFENDANT HARMON LAW OFFICES, P.C.'S MOTION TO DISMISS**

## INTRODUCTION

Harmon Law Offices P.C. is a law firm based in Newton Massachusetts, whose practice is solely concentrated in

representing mortgage servicer's interests in mortgage foreclosure, as well as peripherally related areas of the law such as evicting foreclosed upon borrowers from their residence. Harmon Law Offices, P.C. has long been ***"king of the hill"*** with regards to its market share in this niche of the law in Massachusetts, and as such is well versed in acquiescing to their client's demands to keep the process moving along expediently.

Indeed, it is well known that mortgage servicer's actually grade law firms (such as Harmon) on how quickly they can eviscerate a mortgagor's interest in a residential property, in order to liquidate and transmute the property into proceeds to be distributed to the mortgage servicer and the investors of the securitized trust. After all ***"time is money"***[1]. Failure to keep the assembly line moving along smartly would possibly subject Harmon to losing a very lucrative contract whereby it receives $1,200 to $2,000 for each action it files on behalf of its mortgage servicing client in the Massachusetts Land Court under the Servicemembers Civil Relief Act. Indeed, what a party Harmon has held over the past 5 years at the expense of the rule of law, and at borrowers expense. Historically very few foreclosure actions were ever challenged, and if there was a challenge it is usually waged by an untrained pro se litigant that is unmercifully steamrolled by Harmon's counsel. Everyone in the list of parties involved in the Matt loan is making untold fortunes grinding up the defenseless homeowner.

---

[1] See Exhibit A – Transcription statements of (at page 495) of Walter Porr in U.S. Bank v. Ibanez.

Additionally, while the controversy before this court involves the same nucleus of facts, unlike the Servicemembers case in the Land Court, the claims currently before this court are now brought under the analysis of G.L. c. 244 § 14, G.L. c., 93A, and especially Massachusetts common law regarding civil conspiracy, and RICO under 18 U.S.C. §1962, None of these claims could have, and by operation of law could never be litigated in the Land Court action. ***Therefore, Plaintiff never had the opportunity to fully litigate her claims currently before this court, in the Land Court proceeding***.

With regards to the specific issues before **this court**, Harmon seeks to rely solely on the basses of two legal principles for dismissal of the counts against Harmon in Plaintiff's complaint, Res Judicata, and the Litigation Privilege, both of which are tragically misplaced.

## ARGUMENT

### I. DEFENDANT HARMON LAW OFFICES, P.C.'S *CONDUCT* DURING THE PENDENCY OF THE PROSECUTION OF THE FORECLOSURE ACTION AGAINST MS. MATT.

Contrary to Defendant's assertions, the Plaintiff is not alleging that Defendant made any defamatory statements during the controversy between the parties, rather the Plaintiff, in her complaint, specifically alleges that Harmon Law Offices, P.C.'s ***conduct in a business matter*** forms the basses of her claims. With regards to the specific claims levied at Harmon, Defendant is correct in stating that Stanton & Davis initiated the original

Servicemembers Action as against Ms. Matt, and did so by filing the complaint to foreclose against Ms. Matt on January 27, 2010. Stanton & Davis then filed a withdrawal of appearance on April 13, 2010. Stanton & Davis never filed a re-entry of appearance in this matter.[2]

During the pendency of the litigation between the parties before this court, the Land Court queried HSBC (as the Plaintiff in that action) to proffer further evidence that it was the current holder of the Matt loan (under the Servicemembers' analysis). In response to this request, BAC Home Loans Servicing, LP (at the behest of HSBC as Trustee, and through Harmon) produced documentation evidencing that in fact a "different trust" (HE-2 Trust as opposed to the foreclosing HE-4 Trust) than the foreclosing entity received the assignment of the Matt Loan[3]

Plaintiff states that through this proffer, Harmon was on notice, both from this Memo proffered by its client BAC Home Loans Servicing, LP, and Judge Long's finding that unlike the Servicemembers Action, the foreclosing entity (HSBC as Trustee, et.al.) clearly would not have standing under an analysis under G.L. c. 244 § 14 (something not at issue in the Land Court)[4]. In the face of this evidence, Harmon continued to litigate the claims on appeal in the Land Court action; however at the same time Harmon gave its blessing to Stanton & Davis (who had officially withdrawn from this action, but continued to work in concert with Harmon) to resume the clearly baseless foreclosure

---

[2] Please see Exhibit B - The Docket Sheet of the Land Court Proceeding.
[3] Please see Exhibit C – Acquisition Memo.
[4] Please see Exhibit D – Judge Long's July 8, 2010 Order.

action against Ms. Matt. by sending Ms. Matt a formal foreclosure auction notice[5], without ever re-entering an appearance in the land court action.

Plaintiff's current counsel sent correspondence to Stanton & Davis questioning under what authority it was acting on behalf of HSBC, et. al. Plaintiff's request was rebuffed and never answered[6]. Therefore, it is Plaintiff's position that Stanton & Davis continued the prosecution of the foreclosure action while acting under the direction of, and in concert with, Harmon, as well as the rest of the Defendants. Thus, it was Harmon's conscious decision, and its conduct, to continue to work towards the liquidation of Ms. Matt's home, even though it was on notice of the serious deficiencies in HSBC as Trustee's authority to conduct the foreclosure auction of Ms. Matt's residence, ***not*** statements made by Harmon in pleadings or preliminary matters to litigation, that forms the basses of Ms. Matt's claims against Harmon.

## II. DEFENDANT HARMON LAW OFFICES, P.C. BASSES OF GROUNDS FOR DISMISSAL OF PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b) (6)

### A. Res Judicata

The doctrine of res judicata bars a party from re-litigating "claims that were raised *or could have been raised* "in an earlier action. Allen v. McCurry, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (emphasis added). Federal law governs the

[5] Please see Exhibit E
[6] Please see Exhibit F

issue where both cases raise federal questions. Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir.1994) (citing Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 n. 12, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971)).

Under federal law, the elements required for a res judicata claim are " (1) ***a final judgment on the merits in an earlier proceeding,*** (2) ***sufficient identicality between the causes of action asserted in the earlier and later suits***, and (3) ***sufficient identicality between the parties in the two actions***." Breneman v. United States ex rel. F.A.A., 381 F.3d 33, 38 (1st Cir.2004) (internal quotations omitted).

### 1. The Servicemembers Civil Relief Action In The Massachusetts Land Court

Plaintiff need go no further than Judge Long's Memorandum and Order in the Servicemembers Action brought by Defendant (as a Plaintiff in that action), to proffer evidence how tragically misplaced its res judicata argument is

> "This action was filed by plaintiff HSBC Bank USA, N.A., as trustee of Ace Securities Corp., Home Equity Loan Trust, Series 2005-HE4 ("HSBC"), against defendant Jodi Matt pursuant to the Servicemembers Civil Relief Act, 50U.S.C. App. 501, *et seq.* ("the Act"). Such an action, as a matter of law, is confined to determination of a single question; is the defendant (alleged to be in breach of her mortgage obligations) entitled to the benefits of the Act? *Beaton v. Land Court*, 367 Mass. 385, 390-91 (1975). The answer to that question is "yes" only if (1) the defendant is currently in active military service, and (2) the obligation at issue was incurred *before* that service began. There is also, however, a threshold issue, present in

> all judicial proceedings, which must be satisfied before the inquiry into the defendant's military status can even be reached. Does the plaintiff have standing to bring the lawsuit?" Order at page 1[7]

Therefore, necessarily, the challenge to the Servicemembers' complaint brought in the Land Court was limited solely and specifically with regards to whether the Defendant HSBC as Trustee had standing to bring the lawsuit against Jodi B. Matt in a Servicemembers action, and under the specific analysis related thereto. Further, Judge Long stated that the determination of standing in a Servicemembers' action does not, by law, take into consideration Ms. Matt's failure to pay the mortgage obligation, or whether HSBC as Trustee has the right to foreclose, ***questions it need not and will not answer***.

> "This is a Servicemembers action. It does not seek, and by law cannot give, a determination that Ms. Matt is in breach of her loan or mortgage obligations, or that HSBC may validly foreclose on Ms. Matt's property".

Indeed, it appears from Judge Long's Order that if G.L. c. 244 § 14 was being litigated in that action, it did not appear that HSBC as Trustee had the authority to foreclose, and that this question would certainly arise in "the foreclosure action"

> "Indeed, it is not clear from the record that HSBC is the current holder of either the note or the mortgage - questions I need not and do not decide in this proceeding but which certainly will arise in the context of

[7] See Exhibit D

> foreclosure. *See* G.L. c. 244 § *14;* US Bank N A. v. Ibanez, 17 LCR 202 (2009), 17 LCR 679 (2009)"

Lastly, to completely drive home the point that the issues in the complaint before this court were not, (and by operation of law could not) have been raised or litigated in the Servicemembers Action, Judge Long states how the determination of standing in a Servicemembers case differs from an action questioning the validity of the foreclosing entities right to exercise the power of sale under G.L. c. 244 § 14:

> **But a plaintiff need not be the current holder of the note or the mortgage to have standing in a Servicemembers case**. It is sufficient if the plaintiff satisfies the general requirements of standing.

There is no dispute here as to the fact that Defendant Harmon has failed to establish the requirements under federal law, to succeed on res judicata in that (1) ***there is not*** "sufficient identicality between the causes of action asserted in the earlier and later suits," and (2) ***there is not*** "sufficient identicality between the parties in the two actions.". Lastly, Plaintiff has filed a formal appeal of Judge Graham's decision of the Servicemembers judgment. Based upon the foregoing, and as discussed, Defendant Harmon's reliance on res judicata in this action is completely in applicable here, tragically misplaced, and must be summarily rejected by this court.

**2. Judge Graham's Denial of The Appeal of The Land Court Decision**

Defendant attempts to introduce the Judge Graham denial of Plaintiff's appeal of the Servicemembers Order, for the proposition of res judicata, as discussed above, this proposition is tragically misplaced, and completely preposterous, as Plaintiff did not have the opportunity to fully litigate any part of the foreclosure process under G.L. c. 244 § 14, nor did Plaintiff have the opportunity to raise claims levied against Harmon currently before this court in that action. By law those issues cannot be raised in a Servicemembers Case. Therefore this court must summarily reject Defendants res judicata argument, as lacks any basis in reality.

**B. Litigation Privilege**

Defendant also purports to seek shelter from the Plaintiff's claims under the protective cloak of the "litigation privilege", Defendant's reliance upon the litigation privilege in this action is also tragically misplaced, as the Plaintiff is not making any claims based upon Defendant's "***statements***", ***but rather***, the Plaintiff's claims related to her civil RICO claim and conspiracy claim, and the other related claims against Defendant, are rooted upon Defendant's ***conduct*** in relation to its part in the "enterprise", and the furtherance of the conspiracy against the Plaintiff, related to a business matter. The litigation privilege does not apply to attorney ***conduct*** in counseling and assisting clients in business matters generally. Kurker v. Hill, 44 Mass. App.Ct. 184, 191, 689 N.E.2d 833 (1996).

In discussing the applicability of the litigation privilege, The Restatement of Torts, § 586 (1938), states that [a]n attorney at law is absolutely privileged to publish a false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto. See Sriberg v. Raymond, 370 Mass. 105, 108 (1976) (quoting the Restatement of Torts). In Sriberg, the Supreme Judicial Court of Massachusetts discussed the so-called litigation privilege and held that it attaches to statements made by an attorney "in the institution or conduct of litigation or in conferences and other communications preliminary to litigation." Id. at 109. "The privilege is absolute" and "provides a complete defense even if the *offensive statements are uttered* maliciously or in bad faith." Doe v. Nutter, McLennen & Fish, 41 Mass. App. Ct. 137, 140 (1996). Moreover, the privilege "protects the maker from any civil liability based thereon." Id. See also Blanchette v. Cataldo, 734 F.2d 869, 877 (1st Cir. 1984) ("Massachusetts courts have applied the privilege, not only in defamation cases, but as a general bar to civil liability based on the attorney's **statements**."). See also Tower v. Glover, 467 U.S. 914, 921, 104 S.Ct. at 2825 (under the common law, a privately retained lawyer would not "have enjoyed immunity from tort liability for intentional misconduct")

In this action the Law Office of Stanton & Davis was initially "hired" by Plaintiff to prosecute the foreclosure

action. As part of the enterprise, Stanton & Davis lacks the ability to litigate challenges to Servicemembers actions, as it has grown accustomed to receiving its flat fee for filing uncontested actions under the Servicemembers Civil Relief Act in the Land Court. HSBC as Trustee, through BAC Home Loans, LP (the mortgage servicer of the "enterprise"), then turned to its faithful servant, Harmon Law Offices (the litigator of the "enterprise"), to carry on with the foreclosure process. During the pendency of the litigation in Land Court, Judge Long asked that Plaintiff proffer further evidence that it was the "holder" of the Matt loan. Plaintiff (through its servicer, and Harmon's client, BAC Home Loans, LP) proffered "evidence" that Countrywide Home Loans was servicing the Matt loan, and then tried to bootstrap this absurd purported evidence into an ownership interest in the Matt loan. At no time has Plaintiff ever established a direct and legally viable link from New Century Mortgage Corporation to the Plaintiff.

The purported Assignment in evidence purports to state that New Century Mortgage Corporation made a direct assignment of the Matt Loan to the Plaintiff while in Bankruptcy, a legal impossibility. Indeed Judge Long at footnote 4 on page two of his Order stated that he had serious reservations as to how Plaintiff could have ever received a valid assignment from a bankrupt entity. Faced with this uncontroverted fact, did Defendant Harmon pause for concern? No, instead Harmon immediately sought to proceed with the foreclosure auction at breakneck speed, because after all, *"time is money"*.

Harmon has a pecuniary interest in getting the Matt home liquidated as quickly as possible. Further Harmon has a vested interest in keeping its mortgage servicing client "happy", lest it receive a "bad grade", possibly subjecting it to the loss of business from HSBC.

Clearly, Ms. Matt has not based her claims against Defendant upon the publishing of false or defamatory "statements" made by Defendant in the course of this litigation in the pleadings, or in the preliminary stages leading up to the litigation, ***but rather*** on Defendant's self-dealing wrongful ***conduct*** on its own part, and its ***conduct*** in relation to the pecuniary interest of its mortgage servicing company client. Further, Defendant is defined as a "debt collector" under the FDCPA, and as this action, under information and belief, is based upon the Defendant's wrongful attempt to collect a debt, by the attempted enforcement of a non-existent security instrument against Ms. Matt, Defendant lacks the ability to seek shelter under the litigation privilege as well.

## III. FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

### A. Standard of Review

When a court considers a motion to dismiss pursuant to Fed.R.Civ.P.12(b)(6), ("Rule 12(b)(6)"), it "accept[s] as true all well pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty International Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). "The general rules of pleading require a 'short and plain

statement of the claim showing that the pleader is entitled to relief.'" Id. "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" **Id.** "To survive a motion to dismiss, the complaint must allege 'a plausible entitlement to relief.'" Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008). While "detailed factual allegations" are not required, "a plaintiff's obligation to provide 'grounds' of his 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 550 U.S. 554, 555 (2007); *accord Thomas v. Rhode Island*, 542 F.3d 944, 948 (1st Cir. 2008).

Additionally, "a well pleaded complaint may succeed even if . . . actual proof of those facts is improbable." Bell Atlantic v. Twombly, 550 U.S. at 556; *see* Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir.), *cert. denied*, __ U.S. __, 129 S.Ct. 500 (2008). The court's review is confined to the complaint. In evaluating a Rule 12(b)(6) motion, a court may also "consider documents the authenticity of which are not disputed by the parties'" as well as "'documents central to the plaintiffs' claim'" and "'documents sufficiently referred to in the complaint.'" Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007); *see also* Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d at 321-322; Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

### 3. Plaintiff's Factual Allegations In Her Complaint and Supporting Exhibits

Based upon all of the above reasoning, Plaintiff has succinctly articulated her claims against Harmon, which is complete with a thorough dissection of the requirements of Civil Rico, and also succinctly describes Harmon's role within the "enterprise", which comports with these requirements. Therefore, Plaintiff is not merely "parroting" a recitation of the formulaic requirements of RICO, she is in fact specifically tying Harmon's actions to the requirements of the RICO statute. Additionally, Plaintiff succinctly defines both forms of conspiracy within the Commonwealth, and discusses Defendant Harmon's actions in relation to THESE requirements. Based upon these statements in Plaintiff's complaint, Defendant's ***conduct*** (not statements) provides a basis for Plaintiff's other claims against Harmon.

Therefore Plaintiff's claims can hardly be defined as ***"labels and conclusions".*** Indeed, at the time of the writing of this Memorandum, the Office of the Massachusetts Attorney General is investigating Harmon with regards to improprieties in its foreclosure process.

## CONCLUSION

Based upon the foregoing, the Defendant is clearly not protected under any litigation privilege, and the Plaintiff has not, and never had the opportunity to, fully litigate her claims before this court in the Land Court proceeding, and therefore res judicata is inapplicable in the matter before this court.

Additionally, Plaintiff has met her burden under the lenient pleading standards to defeat dismissal under Rule 12(b)(6)

**WHEREFORE,** based upon the foregoing, Plaintiff respectfully requests that this court Deny the Defendant's Motion to Dismiss in this action,

Respectfully submitted
Jodi B. Matt
By her Attorney

*/s/Glenn F. Russell, Jr*
Glenn F. Russell, Jr.
BBO# 656914
Law Offices of
Glenn F. Russell, Jr.
38 Rock Street, Suite 12
Fall River, MA 02720
Phone (508) 324-4545
Fax: (508) 928-0244
Email:russ45esq@gmail.com

Dated: November 09, 2010

**CERTIFICATE OF SERVICE**

I, Glenn F. Russell, Jr., do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and copies will be additionally served by regular mail upon the following this is the 9th day of November, 2010:

*/s/Glenn F. Russell, Jr*
Glenn F. Russell, Jr.

Nathalie Salomon
Harmon Law Offices, P.C.
159 California Street
Newton, MA 02458