**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

JODI B. MATT
      Plaintiff,

v.

HSBC BANK USA, NATIONAL
ASSOCIATION, ON BEHALF OF THE
TRUST FUND AND OF THE BENEFIT
OF ACE SECURITIES CORP HOME
EQUITY LOAN TRUST SERIES 2005-
HE4 ASSET PASS THROUGH
CERTIFICATES, BANK OF AMERICA
HOME LOAN SERVICING F/K/A
COUNTRYWIDE HOME LOAN
SERVICING, COUNTRYWIDE HOME
LOANS SERVICING LP, HSBC BANK
USA NATIONAL ASSOCIATION, ACE
SECURITIES CORPORATION, WELLS
FARGO BANK NATIONAL
ASSOCIATION, DEUTSCHE BANK
SECURITIES INC., DEUTSCHE BANK
NATIONAL TRUST, DB
STRUCTURED PRODUCTS INC.
COMPANY, COUNTRYWIDE
SECURITIES CORPORATION, THE
MURRAYHILL COMPANY,
NORTHEAST MORTGAGE
COMPANY, NEW CENTURY
MORTAGE CORPORATION, BRAD A.
MORRICE, PATTI M. DODE, DAVID
N. KENNEALLY, HARMON LAW
OFFICES, P.C., STANTON AND
DAVIS, and LAURA M. TOMASELLO,
ESQ.,
      Defendants.

Civil Action No.: 2010-11621-PBS

**HSBC DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION**
**FOR EMERGENCY INJUNCTION**

## INTRODUCTION

Defendants, HSBC Bank USA, National Association on behalf of the Trust Fund and for Home Equity Loan Trust Series 2005-HE4 Asset Backed Pass Through Certificates, and HSBC Bank USA, National Association (collectively "HSBC"), respectfully submit this opposition to Plaintiff's, Jodi B. Matt ("Matt"), Motion for Emergency Injunction.  HSBC requests that the motion be denied for the reasons set forth below.

This action arises out of a foreclosure sale of Matt's property located at 41 Downes Avenue, Canton, Massachusetts ("Property") currently scheduled for January 4, 2011.  HSBC, holder by assignment of the mortgage, commenced foreclosure proceeding following Matt's default on the loan.  Matt has not made a mortgage payment since August 2008.

Matt is seeking an injunction against HSBC on the ground that HSBC does not have standing to foreclosure because the assignment is invalid.  Matt also claims that in order to foreclose HSBC must show that it has the right to enforce the underlying note.  As demonstrated below, the assignment is valid.  Additionally, Matt's allegation that in order to foreclose in Massachusetts the holder of the mortgage must also demonstrate its rights under the note is wrong as a matter of law.  In any event, the note was properly endorsed in blank by the prior note holder and the note is currently held by HSBC.

### I – FACTS
### A.  The Refinancing of Matt's Property

1.  In September 1994, Matt acquired title in the Property.  She initially acquired title in her capacity as Trustee of the Downes Realty Trust, and about two years later she took title individually.  True and accurate copies of the deeds are attached hereto as <u>Exhibit 1</u>.

2.  On or about April 6, 2005, Matt refinanced the Property.

3.  In conjunction with the refinancing ("Matt's loan"), Matt executed a note for $200,000.00 in favor of Northeast Mortgage Corporation ("Northeast").  See Affidavit of Lora Stanford ("Affidavit") and the note attached thereto as Exhibit B.

4.  On or about April 6, 2005, to secure payment of the note, Matt executed a mortgage in the amount of $200,000.00 ("mortgage") in favor of Northeast. See Affidavit and the mortgage attached thereto as Exhibit C.

5.  With the refinancing, Matt paid off delinquent taxes of $11,347.70.  Matt received the balance of the loan proceeds: $180,917.77.  A true and accurate copy of the Settlement Statement describing the disbursement of the funds is attached hereto as Exhibit 2.

6.  On or about April 6, 2005, Northeast assigned the mortgage to New Century Mortgage Corporation ("New Century").  See Affidavit and the recorded Assignment attached thereto as Exhibit D.

7.  Northeast also endorsed the note over to New Century.  See Affidavit and the endorsement contained in the note attached thereto as Exhibit B.

**B.  HSBC Acquires Matt's Loan**

8.  In 2005, Matt's loan was securitized and included in a pool of loans under a Pooling and Servicing Agreement dated June 1, 2005, Ace Securities Corp. Home Equity Loan Trust, Series 2005-HE4, Asset Backed Pass-Through Certificates, ("PSA"), as shown in the Mortgage Loan Schedule attached to the PSA.  See Affidavit and the PSA filed with the Securities Exchange Commission is attached thereto as Exhibit E.   See Affidavit and the first page of the Mortgage Loan Schedule, Schedule 1, of the PSA (entitled "Microsoft Excel – ace2005-HE4_loan_schedule_NEW_CENTURY_FINAL"), as well as the page listing

Matt's loan, are attached thereto as <u>Exhibits H and I.</u>[1]  This document demonstrates that Matt's loan was part of the PSA.

9. The PSA is an agreement between Ace Securities Corp. (Depositor), Countrywide Home Loans Servicing LP (a servicer), Saxon Mortgage Services, Inc (a servicer), Ocwen Federal Bank FSB (a servicer), Wells Fargo Bank, N.A. (a master servicer and securities administrator), and HSBC (Trustee).  See Affidavit and the PSA attached thereto as <u>Exhibit E.</u>

10. The PSA is an agreement that describes how the pooled loans will be serviced and how the proceeds and losses will be distributed to certificateholders.   Matt is <u>not</u> a party to the PSA.

11. Section 2.01 of the PSA provides in pertinent part:

> "The Depositor, concurrently with the execution and delivery hereof, does hereby transfer, assign, set over and otherwise convey to the Trustee, on behalf of the Trust, . . . all the right, title and interest in the Depositor including any security interest . . . in the Mortgage Loans identified on the Mortgage Loan Schedule."  Section 2.01 ¶ 1.
> See Affidavit and its attached <u>Exhibit F.</u>

12. Section 3.01 of the PSA provides in pertinent part:

> "It is intended that Countrywide will purchase the servicing rights relating to the New Century Mortgage Loans on or about September 1, 2005, and will service such New Century Mortgage loans in accordance with the terms and conditions of this Agreement…"  Section 3.01 ¶ 1.

> [O]n or after the Servicing Transfer Date with respect to the New Century Mortgage Loans, the Servicers shall service and admister the Mortgage Loans and behalf of the Trust Fund . . . " Section 3.01 ¶ 3.

> [E]ach servicer in its own name is hereby authorized and empowered by the Trustee . . . to institute foreclosure proceedings, for the benefit of the Trust Fund and Certificateholders."  Section 3.01 ¶ 5. See Affidavit and its attached <u>Exhibit G.</u>

---

[1]  HSBC has not, for privacy law concerns, provided a full copy of Schedule 1 as it contains information about loans other than the subject loan.

13. On or about September 6, 2005, HSBC, through its servicer Countrywide, purchased Matt's loan as evidenced by the boarding notification, and its schedule listing Matt's loan.  The "Board Date" is the date when the loans under the Pooling and Servicing Agreement went live onto ISERIES (Countrywide's servicing system).  In other words, the Board Date is the date that the loans were transferred from New Century to the servicer under the PSA, namely Countrywide Home Loans Servicing, LP, an affiliate of Countrywide Home Loans, Inc. ("Countrywide") n/k/a BAC Home Loan Servicing, LP.  Pursuant to the Boarding Notification, 5053 loans were purchased from New Century.   See Affidavit and the boarding notification is attached thereto as <u>Exhibit K</u>.

14. In conjunction with the PSA, New Century endorsed the note in blank.  See Affidavit in the note attached thereto as <u>Exhibit B</u>.

15. The current servicer of Matt's loan is BAC Home Loans Servicing, LP, f/k/a Countrywide ("BAC").  See Affidavit.

16. The original note is currently held by HSBC.  See Affidavit.

17. On or about April 2, 2007, New Century filed for bankruptcy.   New Century is bankruptcy filing occurred <u>after</u> New Century sold the loan to HSBC.

18. Matt's loan was <u>not</u> an asset of New Century bankruptcy estate.  As explained by the Bankruptcy Judge Kevin J. Carey, "in securitization, the selling Debtor typically sold a group of loans to a trust for a cash purchase price."  Judge Carey also concluded that "the securitization trusts were separate entities **not included** in the Debtors' chapter 11 filing." (emphasis added)  See page 5 of the Opinion on Confirmation issued by Judge Carey in the bankruptcy filing of New Century TRS Holdings, Inc. and its affiliates (including New

Century Mortgage Corporation).  A true and accurate copy of the opinion is attached hereto as <u>Exhibit 3</u>.

19. On November 6, 2007, Countrywide, as HSBC's servicer, executed an assignment to HSBC of Matt's mortgage to New Century.  As the assignment formalized, for public recording purposes, New Century's sale of Matt's loan two years before New Century's bankruptcy, bankruptcy court approval was not needed -- the loan was not a New Century asset.  Moreover, in a power of attorney in 2002 (see Exhibit A) and in the PSA (see Exhibit E), New Century had authorized Countrywide to execute assignments, and the Counrtywide official who executed Matt's was authorized by Countrywide to do so (see Exhibit M).

20. HSBC Bank is the current holder by assignment of the mortgage.  See Affidavit.

### C.  The Foreclosure Proceeding and Servicemembers' Action

21. In 2008, Matt defaulted on her loan.  She made her last payment on August 15, 2008, in the amount of $2,650.73.  This means that Matt has defaulted on 30 monthly payments (over 2 years of arrears).  The past due total is $74,768.62.

22. The principal amount due to HSBC is $196,562.62, plus accrued interest $45,534.04, plus charges, escrow advances and attorney's fees.

23. Matt failed to bring her account current.  As a result, HSBC referred the loan to the Boston law firm of Stanton & Davis to proceed with foreclosure.

24. On or about January 27, 2010, HSBC filed with the Land Court a Complaint to Foreclose pursuant the Servicemembers' Civil Relief Act ("SCRA") (Land Court case no. 10 MISC 421195).[2]

---

[2] In Massachusetts, foreclosure proceedings are non-judicial as foreclosure sales can be conducted pursuant to the mortgagee's right under the statutory power of sale contained in the contract between the mortgagor and the mortgagee, namely the mortgage.  The only purpose of a complaint to foreclosure under the SCRA, is to determine whether there are any persons in the military at the time of the foreclosure proceeding.  See 50 U.S.C. § 533

25. In response, Matt filed a motion to dismiss the SCRA action on the ground that HBSC lacked standing to bring the complaint against her.

26. Matt's multiple attempts to challenge HSBC's standing in the SCRA action failed, as demonstrated below:

   a.   On July 8, 2010, the Land Court issued a decision that HSBC had standing to bring the SCRA action against Matt.  A true and accurate copy of the Land Court decision is attached hereto as Exhibit 4.

   b.   On August 20, 2010, the Land Court denied Matt's motion for reconsideration.

   c.   On September 23, 2010, the Appeals Court denied Matt's Petition for Single Justice Interlocutory Relief.  A true and accurate copy of the Appeals Court's order, dated September 23, 2010, is attached hereto as Exhibit 5.

   d.   On October 22, 2010, the Appeals Court denied Matt's notice of appeal from the single justice's denial of her petition, and her request for leave to take an interlocutory appeal to a panel of the Appeals Court.  A true and accurate copy of the Appeals Court's order is attached hereto as Exhibit 6.

27. On November 5, 2010, the Land Court issued a judgment in favor of HSBC.  A true and accurate copy of the judgment is attached hereto as Exhibit 7.

28. A foreclosure sale is currently scheduled for January 4, 2011 at 11:00 a.m.

29. Matt's complaint is against HSBC, and other entities, including the servicer of the loan and the two law firms retained by HSBC to handle the foreclosure proceeding and the SCRA action.  Matt is seeking to enjoin the foreclosure sale on the ground that HSBC does not have standing, which is the same allegation she made in the SCRA action.

---

(limiting the protection Act against foreclosure actions to persons in the military service at the time action is initiated or to persons discharged within the previous 90 days).  See also *Beaton v. Land Court*, 367 Mass. 385, 390-

## II – ARGUMENT

### Standard

Injunctive relief is an equitable remedy which should only be granted if the party seeking the relief demonstrates that that "(1) it is likely to succeed on the merits, (2) it will suffer immediate and irreparable harm absent the injunction, (3) such harm outweighs any harm to the nonmovant if the injunction is imposed, and (4) the public interest will not be adversely affected. *Fiba Leasing Company v. Airdyne Insdustries*, 826 F. Supp. 38, 39 (1993), citing *Planned Parenthood v. Belloti*, 641 F. 2d 1006, 1009 (1st Cir. 1981).

The critical factor is whether plaintiff is likely to succeed on the merits. *Weaver v. Henderson*, 984 F. 2d 11, 12 (1st Cir. 1993). "In the ordinary course, plaintiffs who are unable to convince the trial court that they will probably succeed on the merits will not obtain interim injunctive relief." *Id.*

### 1. THE COURT LACKS JURSIDICTION TO ENJOIN HSBC.

As shown by HSBC's motion to dismiss (filed herewith and incorporated by reference herein), Matt fails to state a RICO claim against any of the named defendants because, *inter alia*, she has failed to allege facts that plausibly meet the four elements needed for a RICO claim; she has failed to allege an injury "by reason of" a RICO violation; and, her RICO claim is barred by the statute of limitations. Without a viable federal claim, the state law claims should be dismissed without prejudice. *Cobb v. Rabe,* 2010 WL 3860586 (D.Mass.) (Wolf, J.) at * 5 ("because federal courts should ordinarily decline to exercise supplemental jurisdiction over state-law claims when all federal claims are dismissed at an early stage of the case," plaintiff's

---

91 (1975) (failure to comply with the SCRA does not invalidate a foreclosure sale.)

remaining state law claim dismissed without prejudice). This rule applies with particular force here because there is no diversity jurisdiction: there are Massachusetts parties on both sides of the case—Matt as plaintiff and the law firms of Stanton and Davis and Harmon Law Offices, P.C. as defendants. (See complaint at paragraphs. 8, 23, and 24) As the entire case should be dismissed, the Court lacks jurisdiction to enjoin HSBC.

Assuming, *arguendo,* that Matt states a plausible RICO claim, injunctive relief is not available in a civil RICO case. Although neither the Supreme Court nor the First Circuit Court of Appeals has ruled on this issue and there generally is a split of authority, the more persuasive decisions show that injunctive relief is only available to the government. *See Religious Technology Center v. Wollerscheim*, 796 F.2d 1076, 1082-89 (9th Cir. 1986) (injunctive relief not available to private litigants under 1964(c); *Minter v. Wells Fargo*, 593 F.Supp.2d 788, 794-796 (D.Md.2009) (no private right to injunctive relief under civil RICO).

There is authority for the proposition that a preliminary injunction can be granted where Rico claims are presented with pendent state claims. *See Republic of the Phillipines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988).  As shown below, however, Matt is not entitled to injunctive relief under any claims.

### 2.  MATT CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.

The crux of Matt's motion is that HSBC does not have authority to foreclose because it is not the holder of the note, and the assignment of mortgage from New Century to HSBC is invalid.  As demonstrated below, these allegations have no merit.

### A.     The Assignment of Mortgage Held by HSBC is Valid.

Matt alleges that the assignment of mortgage to HSBC is invalid because the assignment was not executed on the Closing Date as allegedly required by the PSA.  See Matt's Motion, page 16.

First, contrary to Matt's allegation, no provision in the PSA requires (1) that the assignment of the mortgage must be executed on the closing date, and (2) that failure to do so renders the assignment void.  Matt points to no PSA provision that supports her allegation.

Second, Matt is <u>not</u> a party to the PSA.  As such, she cannot make a claim that a party to the PSA breached its terms.  Nor can she claim that she is a third-party beneficiary under the PSA.  "To recover as a third-party beneficiary, [plaintiff] must show that it was an intended beneficiary and not merely incidental." *Rymes Heating Oils v. Springfield Terminal Railway*, 265 F. Supp. 2d 147, 151 (2003). "An intended third-party beneficiary is one to whom the contracting parties intended to give the benefit of the promised performance." *Id.* "To determine whether an entity is an intended beneficiary, courts "look at the language and circumstances of the contract for indicia of intention" and the "intent must be clear and definite."" *Id.*  The PSA is devoid of any indicia that its parties intended that Matt, as the mortgagor of one of the loans, is an intended beneficiary to the PSA.

Matt also claims that in determining whether HSBC has standing to foreclose, this Court should verify that HSBC complied with the terms of the PSA.  Matt's Motion, page 19-21.  In support of her claim, Matt relies on two cases decided in bankruptcy court: *In Re Hayes*, 393 B.R. 259 (Bankr.D.Mass. 2008) and *In re Samuels*, 415 B.R. 8 (Bankr.D.Mass. 2009).  These cases are distinguishable for a number of reasons.

First, this case deals with the issue of standing to foreclose under G.L. c.244, § 14, while *In Re Hayes*  and *In re Samuels* involved the creditor's standing in pursuing relief from stay and

the creditor's allowance of its proof of claim. G.L. c.244 § 14 does not require that the foreclosing entity be the holder of the note. Bankruptcy rules, however, require that a creditor, claiming a secured debt, files a copy of the original note and mortgage to its proof of claim. See Fed. R. Bankr. P. 3001(c) and (d); see also Ch. 13 Rule 13-13.

Second, contrary to Matt's claim, in determining whether a creditor had standing to pursue its secured claim, the courts in *In Re Hayes* and *In re Samuels* did <u>not</u> verify that the creditor had complied with the terms of the PSA. Instead, the courts took into consideration the PSA for the sole purpose of deciding whether the creditor, claiming to be the trustee under a PSA, was in fact a party to the PSA and whether the subject loan was transferred under the PSA.

Third, Matt's claim that the assignment is invalid because it was not executed by the closing date as defined by the PSA, is similar to the claim made by the debtor and rejected in *In re Samuels.* In that case, the debtor claimed that the assignment of mortgage should have been assigned to the depositor because the PSA required that all mortgages be funneled to the trustee through the depositor. *In re Samuels* , 415 B.R. 8, 22. The court found this argument unpersuasive: "Even if this direct assignment were somehow violative of the PSA, giving rise to unfavorable tax, regulatory, contractual and tort consequences, neither the PSA nor those consequences would render the assignment itself invalid." *Id*.

Fourth, Matt claims that "the *Hayes* court gave deference to the requirements of the foreclosing trust's governing instrument, the PSA, and accordingly held that the conveyance of the borrower's loan did not comport with its requirements, and thus the Trustee's standing to bring an action to lift the automatic stay failed." See Matt's Motion, page 20. Matt's interpretation of *Hayes* is erroneous. Additionally, the facts in this case are different from those in *In re Hayes*. The court in *Hayes* did not make a determination as to whether the creditor

complied with the terms of the PSA.  Instead, the court found that the creditor did not have standing to pursue relief from stay due to the following three reasons:

1. The entity for which the creditor claimed to be the trustee was not a party to the PSA. The claim and the motion for relief from stay were filed by creditor Deutsche Bank, **as trustee of Argent Mortgage Securities, Inc**. while the parties to the PSA were **Argent Securities, Inc.,** Ameriquest Mortgage Company, and Deutsche Bank National Trust Company. *In Re Hayes*, 393 B.R. at 268.   Here, however, HSBC <u>is a party</u> to the PSA.

2. The assignment was ineffective because the signatory lacked authority to assign the mortgage. *Id.*  Here, HSBC has provided documents establishing that the assignment is valid, namely the Limited Power of Attorney given by New Century to Countrywide and Countrywide's Designation and Authorization by an Authorized Officer, designating Kimberly Dawson as an authorized representative of Countrywide with the authority to execute documents, including assignment.

3. The creditor failed to provide evidence that the loan was included in the PSA and failed to provide a copy of the mortgage loan schedule. *Id.*  Here, HSBC has provided a copy of the Mortgage Loan Schedule showing that Matt's loan is part of the PSA.

Finally, Matt claims that the assignment is invalid because at the time it was executed the assignor, New Century, "was adjudged bankrupt." See Matt's Motion, page 3. This allegation is without merit because New Century's bankruptcy filing occurred *after* New Century had already sold Matt's loan to HSBC, and *after* New Century had already given authority to Countrywide to execute assignments of mortgage on its behalf as demonstrated below:

1. On December 18, 2002, New Century appointed Countrywide its servicer, and authorized Countrywide to execute assignments and other documents related to the servicing of its mortgage loans. See Affidavit and its attached Exhibit A.

2. On September 6, 2005, HSBC purchased Matt's loan from New Century.  See Boarding Notification, with redacted schedules.  See Affidavit and its attached Exhibit J.

3. On April 2, 2007, New Century filed for bankruptcy.

4. On October 25, 2007, Countrywide designated Kimberly Dawson as an authorized representative of Countrywide to execute documents, including assignments of mortgage.  See Affidavit and copy of Countrywide's Designation and Authorization of Kimberly Dawson attached thereto as Exhibit M.

5. On November 6, 2007, Countrywide executed an assignment of mortgage on behalf of New Century, in favor of HSBC, memorializing for recording purposes the 2005 sale of Matt's loan to HSBC under the PSA.  See Affidavit and the assignment attached thereto as Exhibit L.

Additionally, Matt's loan was not an asset of New Century bankruptcy estate.  As explained by the Bankruptcy Judge Carey, "in securitization, the selling Debtor typically sold a group of loans to a trust for a cash purchase price."  Judge Carey concluded that "the securitization trusts were separate entities **not included** in the Debtors' chapter 11 filing." (emphasis added)  See page 5 of the Opinion attached hereto as Exhibit 3.  Therefore, Matt's argument fails.

### B.    HSBC Has Standing to Foreclose on the Mortgage.

Matt alleges that HSBC did not follow the requirements of G.L.c. 244, § 14.  See Matt's Motion, page 6.  Matt's claims that "the foreclosure statutes, and foreclosure in general, presents a daunting myriad of convoluted, and sometimes esoteric and obscure provisions."  *Id.*  In particular, Matt alleges that in order to foreclose a mortgage, the mortgagee must demonstrate that it has rights to enforce the underlying note.  See Matt's Motion, page 10.

Arguably, Matt's motion contains a *daunting myriad of convoluted* and *obscure* allegations which reflect her misunderstanding of the statutory provision governing foreclosure by power of sale.  G.L. c.244, section 14 clearly provides in pertinent part the following: "**The mortgagee** … **or a person authorized by the power of sale** . . . may, upon breach of condition and without action, do all the acts authorized or required by the power." (emphasis added)  Thus, in Massachusetts, the entity authorized to foreclose a mortgage is "the mortgagee" or "any person authorized by the power of sale."  Contrary to Matt's allegation, the statute does not require the mortgagee to demonstrate that it owns the underlying note.  Matt's motion points to no statutory provision or case law in support of her allegation.

More specifically, Matt claims that HSBC has failed to produce evidence of the indorsements required to establish the chain of ownership of the Matt note, nor has it produced any physical note whatsoever providing the authority for a purported assignment of the Matt Note to an assignee of Fremont, who has ceased operations and is in fact bankrupt."  See Matt's Motion page 12.  At the outset, Matt's reference to an assignment of the loan to *Fremont* appears to be in error since there is no factual allegation that any point in time the loan was assigned to Fremont, and HSBC has not made any representation that the loan was assigned to Fremont.

Matt's reliance *in Re Gavin*, 319 B.R. 27 (2004) is misplaced.  That case was an action to enforce the creditor's right under the note, while the case here involves an action by HSBC to

foreclose the mortgage – this is not a suit on note in which HSBC is seeking to enforce its rights under the note.  *In Gavin*, the creditor, Premier, brought an adversary proceeding against the debtor to determine the dischargeability of the *promissory note* assigned to Premier.  To determine the standing of Premier as a creditor, the court requested that Premier produce the original note, as well as evidence of the assignment of the note to Premier.  While Premier was able to produce the original note to Fleet and the assignment of the note by Sovereign to Premier, Premier was unable to produce any evidence of the assignment of the note by Fleet to Sovereign. The court concluded that "absent such evidence, Premier has failed to establish title to the note" and therefore Premiere "is **not a creditor for purposes of Bankruptcy Rule 4007(a)**" and "it has no standing to bring a § 523(a)(2)(A) action against the debtor." *Id*. at 32 (emphasis added).

Thus, the action involved in *In Re Galvin* is different from the action involved here because HSBC is not seeking to enforce its right under the note.  Furthermore, *In Re Gavin* does not stand for the proposition that in Massachusetts, a foreclosing mortgagee must demonstrate that it is the holder of the note.

Matt's reliance on *Strong v. Jackson*, 123 Mass. 60 (1877) is also misplaced.  That case dealt with a dispute between various creditors, each claiming to be the holder of the same mortgage and note.  Contrary to Matt's assertion, the court did not hold that in order to foreclosure, a mortgagee must prove ownership of the note.

Even if, assuming *arguendo,* rights under the note must be demonstrated in order to foreclose, HSBC is the current holder of the note.  See Affidavit filed herewith.  See also the note and its endorsements attached hereto as Exhibit B, showing the endorsement of the note by Northeast to New Century and the endorsement of the note by New Century in blank.

In this instance, HSBC, as the holder of the mortgage by assignment, is authorized by G.L. c.244, § 14 to foreclosure the mortgage by exercising its power of sale.  HSBC is also contractually entitled to foreclosure on the mortgage.  See page 2 of the mortgage: ". . . Borrower does hereby mortgage, grant and convey to Lender **and Lender's successors and assigns, with the power of sale**, the [Property]." (emphasis added)  Therefore, Matt's argument fail.

### 3.  MATT CANNOT DEMONSTRATE IRREPARABLE HARM AND THE EQUITIES WEIGH IN FAVOR OF HSBC.

Matt has not shown a substantial risk of irreparable harm if HSBC proceeds with foreclosure of the Property.  The risk of harm that HSBC will suffer if the preliminary injunction issues prohibiting HSBC from foreclosing on the Property is substantial, consisting of increased arrearages on the loan for Matt's failure to remit timely mortgage payments, advance payments for real estate taxes and property insurance and incurred legal fees to protect its interest in the Property.

**"A preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted"** (emphasis added).  *Fiba Leasing Company v. Airdyne Industries, Inc.* 826 F. Supp. 38, 39 (1993), citing *San Francisco Real Estate v. Real Estate Invest. Trust of America*, 692 F.2d 814, 818 (1st Cir. 1982).  In this instance, Matt acknowledges that she is default.  See Complaint ¶ 30.  She has not made a mortgage payment for over 2 years.  Under the mortgage, HSBC is entitled to foreclose.  The alleged harm is the foreclosure sale of the Property.  This alleged harm is self-inflicted in that Matt breached the terms of the mortgage and failed to make timely payments.  Therefore, Matt fails to satisfy this criterion and her request for preliminary injunction should be denied.

Further, Matt claims that "HSBC faces no risk of irreparable" because if "Matt is successful in her appeal of the Land Court's ruling in the Servicemembers' action then by definition, HSCB will be found to have no standing to bring the foreclosure action" against Matt. See Matt's Motion, page 26. Since Matt filed this complaint and her motion, however, the Appeals Court denied Matt's appeal of the Land Court's ruling and the Land Court entered a final judgment over 30 days ago, which has <u>not</u> been appealed.   As such, Matt's claim that there is still a pending issue regarding HSBC standing in the SCRA action is incorrect.

**4.  MATT FAILED TO DEMONSTRATE THAT THE PUBLIC INTERST WILL BE FURTHERED BY THE ISSUANCE OF THE INJUNCTION.**

Matt claims that an injunction will further the public interest by allowing her to retain her Property. See Matt's Motion, page 27. This claim is unpersuasive as there is no public interest in allowing Matt to stay in her home when she has made no mortgage payment in over two years, causing HSBC to incur costs in advancing payments for real estate taxes and property insurance, and paying legal fees to protect its interest in the Property. Additionally, HSBC may not recover the entire debt owed by Matt if the property value decreases while the amount of the debt continues to increase. The substantial risk that HSBC may not recover the amount owed to it does not further the public interest. Therefore, this claim must fail.

**5.  LACHES AND LACK OF GOOD FAITH BARS THE SOUGHT RELIEF.**

Despite her knowledge that the underlying loan was in default, Matt has not made any effort to reinstate the loan or sell the property to payoff the loan. Matt is now living in the mortgaged property without making any payment.

Since the loan went into default over two years ago, and the foreclosure proceeding was commenced, Matt has had ample time to reinstate the loan, sell the property to pay off the loan or

bring this action.  Laches and bad faith should prevent Matt from obtaining a preliminary injunction where Matt has been in default for 30 months.

### 6.  MATT SHOULD BE REQUIRED TO POST A BOND.

If Court issues an injunction, Matt should be required to post a bond pursuant to Fed. R.Civ.P. Rule 65(c), which provides in pertinent part:

> "**Security.**  The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."
>
> See Fed. R.Civ.P. Rule 65(c).

Matt's loan is contractually due for July 1st, 2008.  She has been living "for free" since then.  HSBC continues to incur substantial costs, including expenses and attorney's fees as well as advances for property insurance and real estate taxes.  If an injunction issues, these expenses will continue to increase.

Matt's claims are without merit and a trier of fact will ultimately find in its favor.  The purpose of the security bond requirement is to protect a defendant for the payment of costs and damages as may be incurred or suffered by the defendant who is found to have been wrongfully enjoined or restrained.

Therefore, if an injunction issues, Matt should be required to post a bond in the amount of the outstanding arrearage, $74,768.62, plus attorney's fees and costs associated with this matter, or any such sum as the Court deems just and proper.

## CONCLUSION

For the foregoing reasons, HBSC respectfully request that Matt's motion for preliminary injunction be denied.


Respectfully submitted:
**HSBC Bank USA, NA on behalf of the Trust Fund and for the benefit of Ace Securities Corp. Home Equity Loan Trust Series 2005-HE4 Asset Pass Through Certificates, and HSBC Bank USA, N.A.**
By its attorneys,


/s/ Nathalie K. Salomon
Robert M. Mendillo
BBO# 342780
rmendillo@harmonlaw.com
Nathalie K. Salomon
BBO# 666893
nsaolomon@harmonlaw.com
HARMON LAW OFFICES, P.C.
P.O. Box 61038
Newton Highlands, MA  02461-0389
Phone: (617) 558-8457 (Mendillo)
Phone: (617) 558-8432 (Salomon)
Fax:    (617)243-4038

DATED: December 10, 2010

## <u>CERTIFICATE OF SERVICE</u>

I, Nathalie K. Salomon, hereby certify that on December 10, 2010 the above HSBC Defendants' Opposition to Plaintiff's Motion for Emergency Injunction was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<u>/s/ Nathalie K. Salomon</u>
Nathalie K. Salomon