UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION
DOCKET NUMBER

_____
                                    )
JODI B. MATT                        )
                                    )
         Plaintiffs                 )
v.                                  )
                                    )
                                    )
HSBC BANK USA, NATIONAL ASSOCIATION )
ON BEHALF OF THE TRUST FUND AND FOR )
THE BENEFIT OF ACE SECURITIES CORP. )
HOME EQUITY LOAN TRUST SERIES 2005- )
HE4 ASSET BACKED PASS THROUGH       )
CERTIFICATES                        )
                                    )
         Defendant                  )
_____)


PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER
MOTION IN OPPOSITION TO HSBC MOTION TO DISMISS

Now comes the Plaintiff, Jodi B. Matt, ("Ms. Matt"), who hereby respectfully submits this Memorandum of Law In Support of Her Motion In Opposition to the Defendant HSBC, et.al. Motion to Dismiss Plaintiff's complaint.

Ms. Matt hereby moves this Court to DENY the Defendant's ("HSBC") Motion to Dismiss the Plaintiff's complaint, as Plaintiff's complaint meets the standard of "facial plausibility", in that she has well pled "factual content that allows this court to draw the reasonable inference that HSBC is liable for the conduct alleged" See *Bell Atlantic v. Twombly* 550 U.S. 544, 556, see also *Aschcroft v. Igbal* 129 S.Ct. 1937, 1949 (2009)

1

**ARGUMENT**

I. **PLAINTIFF'S COMPLAINT SETS FORTH SUFFICIENT FACTUAL MATTER TO STATE A CLAIM FOR RELIEF THAT IS "PLAUSIBLE ON ITS FACE"**

   A. Standard For Evaluating Whether A Complaint Is Sufficient To Survive A Motion To Dismiss

While HSBC correctly states that to survive a Motion to Dismiss, a complaint "must state sufficient facts to state a claim 'plausible on its face'", (See HSBC Motion to Dismiss at page 8), Defendant neglects to provide the following sentence from the quoted opinion in *Ashcroft v. Igbal* 129 S.Ct. 1937, 1949 (2009)[1] The following sentence of the opinion states that "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the conduct alleged" *Ashcroft v. Igbal* at 1949.

Two working principles underlie the holding in *Bell Atlantic v. Twombly*. "First the court must accept the tenant that a court must accept as true all of the allegations contained in the complaint" *Ashcroft* at 1950. "Second only a complaint that states a plausible claim for relief survives a motion to dismiss" Id. "When there are well pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief" Id. "The plausibility standards is not akin to a 'probability requirement', but asks

---

[1] Apparently Defendant misstates the correct page number of the *Ashcroft* opinion, as the page number is referenced as '1979', not 1949.

2

for more than just the sheer possibility that a Defendant has acted unlawfully". *Aschcroft* at 1949.

    **B. Plaintiff Has Pled Factual Allegations Relative To HSBC'S Conduct Related To Claims Of RICO That Allow This Court To Draw The Reasonable Inference That HSBC Is Liable For The Conduct Alleged**

Again, HSBC correctly states that, "to state a claim against RICO Defendant, a RICO Plaintiff "must allege four elements: (1) conduct, (2) of an enterprise, (3) through a pattern; (4) of racketeering activity." See HSBC Motion to Dismiss at page 6.

The basis for Ms. Matt's RICO claims is that HSBC (and Defendant(s)) have filed an admission by way of an evidentiary proffer that indicates that Ms. Matt's loan was "ultimately purchased" by a completely different entity that the entity seeking to hold the foreclosure auction of Ms. Matt's home. Defendant's now make the assertion by way of "affidavit" that this proffer was a "mistake". Apparently one merely has to state a document filed with the court is a "mistake" and this will completely dispel proffered evidentiary documentation to the contrary. These "mistakes" are pervasive, indeed all members of the enterprise collect significant remuneration for their concerted actions in their individual roles within this enterprise. Therefore HSBC's conduct in the enterprise is undertaken with scienter. Ms. Matt's complaint clearly alleges this fact, as well as stating the elements necessary for a RICO plaintiff to plead a facially plausbible cause of action sufficient to withstand HSBC's Motion to Dismiss.

Turning to the Plaintiff's complaint, Plaintiff points to paragraphs 112-117 (inclusive) which succinctly defines the requirements of 18 U.S.C. §1964(c). With regards to the first element, alleging "conduct, Ms. Matt points to paragraph 124 of her complaint

124. 1962(c), also requires that the Defendants conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs. The United States Supreme Court has interpreted this language to mean that a Defendant must 'operate and manage' the enterprise, *Reeves v. Ernst & Young*, 507 U.S. 170, 183 (1993).

Further at line 125 Ms. Matt states

125. "An enterprise is 'operated' not just by upper management, but also by lower-rung participants in the enterprise who are under the direction of upper management. An enterprise also may be 'operated' or 'managed' by others associated with the enterprise who exert control over it as, for example by bribery." *Reeves* at 184.

Further at paragraph 125, Ms. Matt states:

125. Under information and belief, Defendants all participated in a joint enterprise to willfully induce Ms. Matt to enter into a loan transaction that Defendants knew or should have known would result in default. Each Defendant may have had different roles in this enterprise, however it continues today through the enterprise's attempt to foreclose on Ms. Matt's home without any indicium of ownership of this obligation. Defendants have all received significant remuneration from these actions.

As to the second element of a RICO claim (alleging that an 'enterprise' exists), Ms. Matt points to paragraph 122 of her complaint.

121. Under information and belief, Defendants represent an "association in fact enterprise", as they are a group that was formed to carry out illegal acts through the use of the United States wires and Postal System. Although there is not hierarchal structure or chain of command, and Members of the group may not have fixed roles; and different members perform different roles at different times, it was (and still is) in existence to carry out its purpose

At paragraph 120, Ms. Matt defines an 'association in fact enterprise'

120. In *Boyle v. United States*, 129 S.Ct. 2237 (2009), the United

States Supreme Court clarified the characteristics of an actionable "association in fact enterprise". The Supreme Court stated that an association in fact enterprise possesses three characteristics; (1) a purpose, (2)relationships among those associated with the enterprise,(3)longevity sufficient to permit these 'associates' to pursue the enterprise's purpose. The Supreme Court further explained: "Such a group need not have a hierarchical structure or a chain of command; decisions may be made on an ad hoc basis and by any number of methods by majority vote, consensus, a show of strength, etc. Members of the group need not have fixed roles; different members may perform different roles at different times. The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies. While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, noting in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence. Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique, for example a group that does nothing but engage in extortion through old fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach" *Boyle* at 2245-2246. See also *Jay E. Hayden Foundation v. First Neighbor Bank, N.A*., 2010 WL 2485679 *6 (7º Cir.2010)

At paragraphs 126 and 127, Ms. Matt succinctly defines the third requirement "relatedness", and "pattern of conduct". At paragraph 131 (a-d inclusive), Ms. Matt clearly alleges HSBC's conduct with regards to the related predicates undertaken by it, as well as the other members of the enterprise. Ms.Matt also alleges that the conduct of HSBC is "ongoing and such conduct by the enterprise is "threatened to be repeated or to extend indefinitely into the future", as the enterprise is involved in many other such schemes involving other borrowers in the Commonwealth.

At paragraph 128,Ms.Matt states:

128. Here, **_all of the Defendants_** sought the same result, which was the ultimate purpose of their concerted actions; to induce Ms. Matt to undertake the mortgage loan from Northeast Mortgage Corporation (which was then ~assigned" to New Century on the very same day). Under information and belief, these same Defendants are currently carrying out this ongoing enterprise against other residents of the Commonwealth, as well as nationally.

5

Turning to Ms. Matt's allegations of HSBC's conduct with regards to "pattern of activity" and "racketeering activity" requirements, Ms. Matt defines the predicate act as mail and wire fraud under, 18 U.S.C. §§ 1341, 1343, at paragraph 134. Further Ms. Matt then succinctly alleges at paragraphs 135 and 136, that HSBC (and all Defendant(s))use of the mail and wires was for the purpose of inducing Ms. Matt to undertake a loan that was known or should have been know to fail, and that the use of the mails and wires was ongoing through sending monthly payment demands on an legally unenforceable debt. Additionally, the mails and wires are still being used to facilitate the attempted foreclosure process of Ms. Matt's home. Seemingly, HSBC wishes to confuse or misstate Ms. Matt's claims as to the claimed RICO predicate acts, as HSBC conveniently omits Ms. Matt's allegations levied against it, with regards to its conduct related to Bank Fraud, see complaint at paragraphs 139-141 inclusive. HSBC also omits any reference to Ms. Matt's allegations at paragraph 143 levied against it with relation to extortion, as it directs its "servicer" BAC to send monthly payment demands to Ms. Matt through use of the United States Mails to collect monies on a legally unenforceable debt.

Ms. Matt <u>*clearly relied upon the enterprises false representations through the use of the U.S. Mails*</u> that the enterprise was legally entitled to monthly mortgage payments, and upon the false assertion that the enterprise had the right to place an encumbrance upon her land, and the equally false assertion that it has the right to enforce the security

6

instrument for a legally unenforceable debt, through the threatened foreclosure auction of Ms. Matt's home.

Clearly, Ms. Matt has pled factual content that allows this court to draw the reasonable inference that HSBC is liable for the conduct alleged" *Ashcroft v. Igbal* at 1949. Therefore Ms. Matt respectfully requests that this court DENY HSBC's Motion to Dismiss.

> **C.** Ms. Matt Is a Person, Who Has Sustained An Injury, To Her Property As a But For, and Proximate Cause, of HSBC's Conduct Violation of §1962, And Therefore Has Standing To Bring A RICO Claim.

Again, HSBC correctly sets out the standard, this time related to the §1962(c)requirements to establish a Plaintiff's standing to bring a RICO claim, which is that; 1)a person, 2) who sustains injury to her, 3) business or property, 4) by reason of the Defendant's violation of §1962.

As to the first element, HSBS admits Ms. Matt qualifies as a "person". As to the second element, Ms. Matt has made mortgage payments on her mortgage to an entity with no legal right to demand payment, as a result of HSBC's role in the enterprise, Ms. Matt has suffered a significant financial injury with regards to HSBC's role in its demand for payment to this particular enterprise. Ms. Matt also suffered significant financial injury related to the enterprise's demand for a lump sum payment to cure non-existent rights to arrearages, which forced her to liquidate her entire life savings in the form of a retirement account, in

order to acquiesce to the Enterprise's demands for payment upon a legally unenforceable debt.

Ms. Matt continues to suffer injury to her property by way of HSBC's creating the appearance that it has a legally enforceable security interest upon Ms. Matt's Property Title on record at the Norfolk County Registry of Deeds, and as such there remains an illegal encumbrance placed upon her land by HSBC. HSBC has also caused Ms. Matt significant financial injury through the prosecution to collect on this unenforceable debt, forcing Ms. Matt to defend actions both here before this court, as well as the Servicemembers Action in the Land Court. Therefore Ms. Matt clearly satisfies the third prong of the requirements of standing to bring a RICO claim. Lastly as the above clearly alleges, Ms. Matt's injuries are a "but for" and "proximate cause of" her injuries described above, Under the above reasoning, Ms. Matt respectfully requests that this court DENY HSBC's Motion to Dismiss, as she has clearly alleged, and pled her standing to bring a RICO claim against HSBC.

II. **PLAINTIFF LACKED SCIENTER OF DEFENENDANT(S) CONDUCT RELATIVE TO THE ENTERPRISES PREDICATE ACTS, PRIOR TO THE INITIATION OF FORECLOSURE PROCEEDINGS**

Defendant states that "by February 2006, Matt knew she was injured by Northeast's switching of the original loan terms, and by Countrywide's refusal to honor her request that the loan employ those original terms."

HSBC, apparently seeks to use the "best offense is the best defense" course of action here. HSBC's statements may be

8

taken as its admission that the loan terms indeed were "switched", however contrary to HSBC's spin on the matter, Ms. Matt did not learn of the central basis of her RICO claims here, which is that her loan is in a completely different "securitized trust" than the one seeking to foreclose upon her home, until she was forced to defend the action in the Land Court As a result of the evidence proffered by the enterprise during the pendency of the Land Court action, Ms. Matt only recently discovered that she had made continued mortgage payments to an entity that was enforcing a legally unenforceable debt as against her. Only upon the discovery of this predicate act, was she alerted to the fact that an enterprise existed. This discovery forms the basis of her RICO claims against HSBC. Therefore Ms. Matt's RICO claim is **_not_** time barred.

### III. THE LAND COURT JUDGMENT

HSBC, continues to willfully attempt to confuse the issue presently before this court.

Ms. Matt respectfully requests opposing counsel to point out **_exactly where in her complaint_** does she ask this court to "renew the land court judgment"? Ms. Matt merely recites the procedural history of the Land Court case in this matter, and the proffers of evidence in **_that_** matter, which are relevant here in the case before this court on a completely different basis. Ms. Matt would also take this opportunity to alert this court, that she has filed a formal appeal in the Land Court case, as she had only

previously appealed the decision as an interlocutory order prior to judgment.

Ms Matt clearly points out in her opposition to Harmon Law's Motion to Dismiss, that the Judge in the matter before the Land Court (Judge Long), clearly indicates that the examination of "standing" is completely different in a Servicemembers action, than one conducted under a review of G.L. c. 244 § 14. Judge Long clearly stated that he had "serious reservations" that HSBC had possession of Ms. Matt's Note and Mortgage, as HSBC purportedly received an "assignment" from New Century when it was an adjudged bankrupt. Despite this fact, Judge Long made the determination that _**unlike**_ a review of G.L. c. 244 § 14 (like the case before this court), in a Servicemembers case he felt that the entity brining that action did not need possession of the borrowers Note or Mortgage. Therefore the actions and analysis of standing thereof in a Servicemembers Action are completely different kettles of fish than the review which is required in the case before this court. HSBC's continued attempt to confuse this issue should be recognized for what it truly is, a ruse.

 IV. **THIS COURT'S SUBJECT MATTER JURISDICITION OF MS. MATT'S STATE CLAIMS**

Based upon the previous paragraphs, Ms. Matt has stated a "facially plausible" cause of action against HSBC, as she has well pled "factual content that allows this court to draw the reasonable inference that HSBC is liable for the conduct alleged"

See *Bell Atlantic v. Twombly* 550 U.S. 544, 556, see also *Aschcroft v. Igbal* 129 S.Ct. 1937, 1949 (2009)

**WHEREFORE**, Ms. Matt respectfully requests that this court DENY HSBC's Motion to Dismiss her complaint.

|  |  |
|---|---|
|  | Respectfully Submitted, |
|  | Jodi B. Matt |
|  | By Her Attorney |
|  |  |
|  | /s/Glenn F. Russell, Jr |
|  | Glenn F. Russell, Jr. |
|  | The Law Office of |
|  | Glenn F. Russell, Jr. |
|  | 38 Rock Street, Suite 12 |
|  | Fall River, MA 02720 |
|  | (508) 324-4545 |
| Dated: January 10, 2011 | BBO# 656914 |

## CERTIFICATE OF SERVICE

I, Glenn F. Russell, Jr., do hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) and copies will be additionally served by electronic and regular mail upon the following this is the 10[nth] day of January, 2011:

/s/Glenn F. Russell, Jr
Glenn F. Russell, Jr.

Courtney L. Benson (BBO# 675679)
Chad W. Higgins (BBO# 668924)
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
Tel. 617-570-1000
Fax. 617-523-1231
courtneybenson@goodwinprocter.com
chiggins@goodwinprocter.com