UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
                                )
JODI B. MATT,                   )
                                )
                                )
          Plaintiff,            )
                                )
          v.                    )     Civil No. 1:10-11621-PBS
                                )
HSBC BANK USA, N.A., et al.,    )
                                )
          Defendants.           )
                                )
```

**MEMORANDUM AND ORDER**

September 23, 2011

Saris, U.S.D.J.

## I.   INTRODUCTION

This case involves a home foreclosure. Plaintiff Jodi Matt, the homeowner, alleges that HSBC Bank USA, N.A. and seventeen other named defendants engaged in an illegal enterprise to procure and sell mortgage loan products for ultimate sale in the secondary market in violation of the Racketeer Influenced Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-68, and state law.[1]

---

[1] Count I seeks "Preliminary and Permanent Injunctive Relief," Count II alleges violation of 18 U.S.C. § 1962, Count III alleges "Respondeat Superior Liability," Count IV alleges violation of "Chapter 93A and its Implementing Regulations," Count V seeks "Rescission by Way of Recoupment under G.L. c. 140 D," Count VI alleges "Breach of Contract," Counts VII and VIII allege "Intentional Misrepresentation," the next count listed

HSBC has moved to dismiss on the ground that the RICO claim is barred by the statute of limitations.  The court **ALLOWS** the motion to dismiss the RICO claim as time-barred, but retains subject matter jurisdiction over the state-law claims.

## II.  FACTUAL BACKGROUND

The following alleged facts, culled from the relevant portions of Plaintiff's complaint, are taken to be true for purposes of this motion to dismiss.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1943 (2009).

In early 2005, Jodi Matt owned her Canton, Massachusetts, home, which was valued at over $750,000, free from any mortgages or other liens.  Compl. ¶ 27.  On March 18, 2005, Ms. Matt applied for a loan with Northeast Mortgage Company.  The loan documents promised an 8.158% interest rate and required monthly payments of $1,329.26.  Compl. ¶ 28.  However, on April 6, 2005, a Northeast Mortgage Company representative came to Ms. Matt's home and asked her to sign loan documents offering an interest rate of 10.528% and requiring monthly payments ranging from $1,429.37 to $1,806.23 after 12 months.  During the signing of the documents, these changes were never explained to Ms. Matt. Compl. ¶ 29.  In August of 2005, Countrywide Home Loans

---

alleges "Civil Conspiracy" under Massachusetts law, Count X alleges "Breach of the Covenant of Good Faith and Fair Dealing," and Count XI alleges "Unjust Enrichment."

("Countrywide") began servicing the loan.  By the end of 2005, Ms. Matt was in default.  Compl. ¶ 30.

In February 2006, Ms. Matt's monthly mortgage payment increased significantly and subsequent to this increase, the loan had become several months delinquent.  After the bank denied her request that it honor the original interest and payment amounts of the mortgage contract, Ms. Matt entered into a repayment plan with Countrywide.  Compl. ¶ 31.

In October 2007, Ms. Matt was three months in arrears and received a foreclosure notice from Countrywide.  Compl. ¶ 33. Between November 2007 and March 2009, she contacted Countrywide to try to modify the terms of her loan but was unsuccessful. Compl. ¶ 34-41.  After learning in May 2009 that Bank of America had taken charge of the loan, Ms. Matt repeatedly contacted Bank of America to try to modify the loan and "was told at all times that the modification was being processed and she would have to be patient."  Compl. ¶ 42-44.  Nonetheless, on September 14, 2009, Bank of America sent Ms. Matt notice of its intent to foreclose on her home.  Compl. ¶ 45.  On January 27, 2010, HSBC Bank USA, to which Ms. Matt's Note and mortgage had been assigned, filed a complaint in the Massachusetts Land Court to foreclose on Ms. Matt's home.  Compl. ¶ 47-49.

III. DISCUSSION

The plaintiffs' burden is to plead "sufficient matter, accepted as true, to state a claim for relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 570 (2007)).  "A case has 'facial plausibility' when plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (internal quotation marks omitted).  In considering the adequacy of pleadings, a court must take as true the factual allegations in the plaintiff's pleadings and must make all reasonable inferences in favor of the plaintiff. <u>Rivera v. Rhode Island</u>, 402 F.3d 27, 33 (1st Cir. 2005).

**A. The Federal Civil RICO Claim (Count II)**

The first question is whether the RICO claim is barred by the statute of limitations.  A "civil RICO claim is subject to a four-year statute of limitations." <u>Lares Group, II v. Tobin</u>, 221 F.3d 41, 44 (1st Cir. 2000).  The First Circuit applies "'an injury discovery accrual rule starting the clock when a plaintiff knew or should have known of his injury.'" <u>Id.</u> (quoting <u>Rotella v. Wood</u>, 528 U.S. 549 (2000)).

Ms. Matt alleges she was injured as a result of the HSBC Defendants inducing her "to sign the mortgage contract based upon false assertions by Northeast."  Compl. ¶ 131.  After offering her one interest rate and required monthly payment, Northeast Mortgage Company asked Ms. Matt to sign loan documents presenting a higher interest rate and larger required monthly payments. During the signing of the documents, these changes were allegedly never explained to Ms. Matt.  Compl. ¶ 29.  Ms. Matt claims she was injured as a result of this unexplained, unexpected interest rate increase; by the end of 2005, the loan was in default.

Ms. Matt knew or should have known of her injury more than four years before she filed her complaint.  According to Ms. Matt's complaint, she knew by February of 2006 that she had been injured by the increased interest rate.  She explains that in February 2006, her loan had become several months delinquent, and she indicates that shortly thereafter she asked "the bank[] to honor the original interest and payment amounts of the mortgage contract."  Compl. ¶ 31.  Thus, according to her own allegations, by February of 2006, more than four years before she filed her complaint on September 23, 2010, Ms. Matt knew of her injury.

Ms. Matt does not deny that she knew of the interest rate increase in February 2006.  Instead, she argues that because she "only recently discovered . . . . that an enterprise existed," her RICO claim is not time-barred.  Opp'n at 9.  However, the First Circuit has adopted "the injury discovery rule" under which

5

"'discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.'"  Lares Group, II v. Tobin, 221 F.3d 41, 44 (1st Cir. 2000) (quoting Rotella v. Wood, 528 U.S. 549, 555 (2000)).  Consequently, Ms. Matt's argument must fail, and the motion to dismiss the RICO claim is allowed.

## B. The state-law claims

The next question is whether the dismissal of the RICO claim requires the dismissal of the state-law claims due to a lack of subject matter jurisdiction.

Under the federal statute governing diversity jurisdiction, 28 U.S.C. § 1332, federal courts have original jurisdiction of all civil actions between citizens of different states where the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332(a). Complete diversity between all plaintiffs and all defendants is required.  Lincoln Prop. Co. v. Roche, 546 U.S. 81, 89 (2005). The "time-of-filing rule," which "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing," is "hornbook law . . . taught to first-year law students in any basic course on federal civil procedure."  Grupo Dataflux v. Atlas Global Grp. L.P., 541 U.S. 567, 570-71 (2004). Still, it is not without exception.  The dismissal of a party resulting in complete diversity has "long been an exception to the time-of-filing rule."  Id. at 572.

In <u>Caterpillar Inc. v. Lewis</u>, 519 U.S. 61 (1996), complete diversity had been lacking at the time the case was brought to federal court but was later created when the diversity-destroying defendant settled out of the case and was dismissed before trial. The Court held that the dismissal of the non-diverse party cured the initial jurisdictional defect.  <u>See</u> <u>id.</u> at 73 ("The <u>jurisdictional</u> defect was cured, <u>i.e.</u>, complete diversity was established before the trial commenced.").  In <u>Grupo</u>, the court elaborated on <u>Caterpillar</u>:

> The sum of <u>Caterpillar's</u> jurisdictional analysis was an approving acknowledgment of Lewis's admission that there was "complete diversity, and therefore federal subject-matter jurisdiction, at the time of trial and judgment." 519 U.S., at 73, 117 S.Ct. 467. The failure to explain why this solved the problem was not an oversight, because there was nothing novel to explain. The postsettlement dismissal of the diversity-destroying defendant cured the jurisdictional defect.

<u>Id.</u>  Thus, under <u>Grupo</u> and <u>Caterpillar</u>, where complete diversity of parties is lacking at the time a case is brought to federal court but is created before trial when all non-diverse defendants settle and are dismissed, the time-of-filing rule yields to a well-established exception: a lack of diversity at the time of filing can be cured by a post-settlement dismissal of non-diverse parties.[2]  <u>See</u> <u>In re Olympic Mills Corp.</u>, 477 F.3d 1, 12 n.10

---

[2] While Wright and Miller note that a "corollary of the general rule that diversity is determined as of commencement is that if diversity of citizenship did not exist when the action was commenced, the courts generally are in agreement that it cannot be created by a later change of domicile by one of the

(1st Cir. 2007)(noting that dismissal of a non-diverse party
pursuant to settlement can cure a jurisdictional defect.)  In a
similar case, the Sixth Circuit considered "whether [an] original
defective allegation of federal question [jurisdiction] can be
corrected by a subsequent happenstance creation of diversity
jurisdiction" and concluded it can.  <u>AmSouth Bank v. Dale</u>, 386
F.3d 763, 778-79 (6th Cir. 2004)(relying on <u>Grupo</u> and
<u>Caterpillar</u>).

Here, subject matter jurisdiction was initially alleged on
the basis of a federal question (arising under the civil RICO
statute), but that jurisdictional support has crumbled after the
dismissal of the federal RICO claim.  Although Ms. Matt's
complaint also alleged diversity jurisdiction, complete diversity
was lacking at the time she filed her complaint because Ms. Matt
and two of the original defendants, Stanton & Davis and Harmon
Law Offices, P.C., are all from Massachusetts.[3]  Nonetheless,
after HBSC Defendants filed their motion to dismiss, the non-
diverse Massachusetts defendants were dismissed, pursuant to a

_____

parties or some other potentially diversity-creating event," they
acknowledge four sentences later that "a defect in diversity in a
multiple party action need not lead to dismissal" and go on to
observe that the dismissal of a non-diverse party under Rule 21
can cure a lack of diversity.  13E C. Wright, A. Miller, & E.
Cooper, Federal Practice and Procedure § 3608 (3d ed.2001).


[3] Ms. Matt's allegation that the amount in controversy
exceeded $75,000 has not been contested.

settlement, under Rule 41(a)(1)(ii).  <u>See</u> Joint Stipulation of Voluntary Dismissal of Claims Against Defs. Stanton & Davis and Harmon Law Offices, P.C., Aug. 11, 2011, ECF No. 84.  Just as a <u>Caterpillar</u> morphs into a butterfly, so does the federal question morph into diversity.  Thus this court retains subject matter jurisdiction over the state-law claims.  Because HSBC Defendants did not address the merits of the state-law claims in their motion to dismiss, and instead argued for dismissal due to a lack of subject matter jurisdiction, their motion to dismiss those claims is denied.

**ORDER**

HSBC Defendants' motion to dismiss (Docket No. 28) is **<u>ALLOWED IN PART</u>** and **<u>DENIED IN PART</u>**.  The motion to dismiss is **<u>ALLOWED</u>** with respect to Count II, the civil RICO claim, but is **<u>DENIED</u>** with respect to all other counts.

<u>/s/ Patti B. Saris</u>
PATTI B. SARIS
United States District Judge