# United States District Court
# District of Massachusetts

JODI B. MATT,
>        Plaintiff,


>        v.                                    CIVIL ACTION NO. 10-11621-PBS


HSBC BANK USA, NATIONAL
ASSOCIATION, ON BEHALF OF
THE TRUST FUND AND FOR THE
BENEFIT OF THE ACE SECURITIES
CORP. HOME EQUITY LOAN TRUST
SERIES 2005-HE4 ASSET PASS
THROUGH CERTIFICATES, ET AL.,
>        Defendants.

## *REPORT AND RECOMMENDATION ON CERTAIN DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#115)*

COLLINGS, U.S.M.J.

### *I. Introduction*

The plaintiff Jodi B. Matt ("Matt") has sued HSBC Bank USA, National

Association, on Behalf of the Trust Fund and for the Benefit of ACE Securities

Corp. Home Equity Loan Trust Series 2005-HE4 Asset [Backed] Pass Through Certificates ("HSBC as Trustee") and several other defendants asserting claims arising out of the financing of a mortgage loan on her property in Canton, Massachusetts.  Among other things, Matt seeks to forestall foreclosure on her home:  she claims essentially that defendant HSBC as Trustee cannot establish that it is the mortgagee of her property and that it therefore lacks authority to foreclose on her home.

On October 30, 2012, a number of Defendants (the "Moving Defendants")[1] filed their Certain Defendants' Motion for Summary Judgment (#115) together with their Memorandum of Law in Support of Their Motion for Summary Judgment (#116), their Statement of Undisputed Material Facts in Support of Their Motion for Summary Judgment (#117), and supporting documentation (#118, Aff. of Courtney L. Benson with exhibits; #119, Aff. of Maria Osinski with exhibits).  On November 20, 2012, Matt filed her Plaintiff's Opposition to Certain Defendannts [sic] Motion for Summary Judgment (#126), along with her Statement of Material Facts in Support of Their [sic]

---

[1]        The moving defendants are:  Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP ("Bank of America"), HSBC Bank USA, N.A. ("HSBC"), HSBC Bank USA, N.A., on Behalf of the Trust Fund and for the Benefit of ACE Securities Corp. Home Equity Loan Trust Series 2005-HE4 Asset Backed Pass Through Certificates ("HSBC as Trustee"), Countrywide Securities Corporation ("Countrywide"), Wells Fargo Bank, N.A. ("Wells Fargo") and ACE Securities Corp. ("ACE").

Motion for Summary Judgment (#127) and the Affidavit of Glenn F. Russell, Jr. (#128), with exhibits.   On December 4, 2012, the Moving Defendants filed Certain Defendants' Reply Memorandum in Support of Their Motion for Summary Judgment. (#131)  The Court heard oral argument on the motions on January 3, 2013.  Subsequently, on January 8, 2013, with leave granted, Matt filed her Sur Reply to the Defendants' Reply Memorandum in Support of Their Motion for Summary Judgement.  (#144)  On January 9, 2013, the Moving Defendants filed their Surreply in Support of Their Motion for Summary Judgment.  (#145)  The record is complete, and the motion is ripe for disposition.

 For the following reasons, the Court shall recommend that the motion for summary judgment be granted.

## II. Background

The following facts, which provide an overview, are drawn from the parties' statements of undisputed facts, and are undisputed unless otherwise noted.   The Court sets out further factual details in the discussion section below.

On April 6, 2005, Matt obtained a mortgage loan secured by her property in Canton, Massachusetts from Northeast Mortgage Corporation ("Northeast").

(#117 ¶ 2; #127 ¶ 1)  On the same date, Matt executed an adjustable rate promissory note (the "note") for $200,000 in favor of Northeast.  (*Id.*)  On April 6, the same day Matt obtained the mortgage loan, Northeast purported to assign the mortgage to New Century. (#117 ¶¶ 3-4; *see also* #118, Exh. 4)[2] The purported assignment was recorded in the Norfolk County Registry of Deeds on December 19, 2006.  (#127 ¶ 3; *see also* #118, Exh. 4)  New Century subsequently purported to assign the mortgage to HSBC as Trustee on November 6, 2007.  (#117 ¶ 5; *see also* #118, Exh. 6) This subsequent purported assignment was recorded in the Norfolk County Registry of Deeds on about November 16, 2007.  (#127 ¶ 5)

Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, formerly known as Countrywide Home Loans Servicing, LP ("Bank of America") serviced the mortgage loan until October 1, 2012, when the servicing rights transferred to Select Portfolio Servicing, Inc.  (#127 ¶ 7)

---

[2]      Matt challenges the legal import and validity of the assignments at issue in this case, but does not dispute their existence.  Likewise, she challenges the import of the recording of the assignments, but does not dispute the fact that the assignments were recorded.  In this regard, the Court notes that Matt has failed to comply with the requirements of Mass. Dist. Ct. Local Rule 56.1, which requires a party opposing a motion for summary judgment to "include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation." Instead, Matt has offered paragraphs of legal argument that have no place in a party's concise statement of facts.  In most cases, the documents speak for themselves.  Further, in those instances in which Matt simply asserts that she is "without sufficient scienter as to the truth or falsity of such averment," or contends that she lacks knowledge to admit or deny certain facts  (*see, e.g.*, #127 ¶¶ 3, 6, 7) the Court deems those facts uncontroverted for purposes of this summary judgment motion.

Matt initially defaulted on the mortgage loan in October 2005, when she failed to make her monthly payment. (#127 ¶ 8) After bringing her loan current in January 2007, Matt again defaulted in April 2007. (*Id.*) Thereafter, Matt made payments in May, June, and August, although without bringing the loan current, and then ceased to make any payments until April of 2008. (#117 ¶ 8; *see also* #119, Exh. E) In April of 2008, Matt brought her loan current via a lump sum payment of $34,898.35. (#117 ¶ 8; *see also* #119, Exh. E and Exh. G)

In May of 2008, plaintiff again defaulted on her payment obligations and, absent making one payment in August of 2008, she has made no further payments to date. (#117 ¶¶ 8-9; *see also* #119, Exh. E) Bank of America sent Matt a Notice of Intention to Foreclose on September 14, 2009, which provided Matt the opportunity to cure her default. (#127 ¶ 11; #119, Exh. I) Matt did not cure the default. (*Id.*) On January 27, 2010, HSBC as Trustee filed a complaint in the Massachusetts Land Court as a preliminary step to foreclose on Matt's home. (#1 ¶ 49)

On September 23, 2010, Matt filed the present lawsuit, in which she asserts the following claims: Count I seeks "Preliminary and Permanent Injunctive Relief"; Count III alleges "Respondeat Superior Liability"; Count IV

alleges violation of "Chapter 93A and its Implementing Regulations"; Count V seeks "Rescission by Way of Recoupment under G.L. c. 140D"; Count VI alleges "Breach of Contract"; Counts VII and VIII allege "Intentional Misrepresentation"; Count IX alleges "Civil Conspiracy" under Massachusetts law; Count X alleges "Breach of the Covenant of Good Faith and Fair Dealing"; and Count XI alleges "Unjust Enrichment."[3]   The Moving Defendants have moved for summary judgment on all counts.

### III. Standard of Review

The purpose of summary judgment is "to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Rojas–Ithier v. Sociedad Espanola de Auxilio Mutuo y Beneficiencia de Puerto Rico*, 394 F.3d 40, 42 (1 Cir., 2005) (internal quotations marks and citation omitted).   When considering a motion for summary judgment, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).   The moving party bears the initial burden of asserting the absence of a genuine issue of material fact and "support [ing] that assertion by affidavits, admissions, or

---

[3]     Chief Judge Saris dismissed Count II (Civil Rico) on September 23, 2011.  (*See* #89)

other materials of evidentiary quality." *Mulvihill v. Top–Flite Golf Co.*, 335 F.3d 15, 19 (1 Cir., 2003) (citations omitted); *Borges ex rel. S.M.B.W. v. Serrano–Isern*, 605 F.3d 1, 5 (1 Cir., 2010).

> Once the moving party alleges the absence of all meaningful factual disputes, the non-moving party must show that a genuine issue of material fact exists. This showing requires more than the frenzied brandishing of a cardboard sword. The non-moving party must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment.

*Certain Interested Underwriters at Lloyd's, London v. Stolberg*, 680 F.3d 61, 65 (1 Cir., 2012) (internal citations and quotation marks omitted); *Fontánez–Núñez v. Janssen Ortho LLC*, 447 F.3d 50, 54–55 (1 Cir., 2006).

In determining whether summary judgment is proper, "a court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor." *Clifford v. Barnhart*, 449 F.3d 276, 280 (1 Cir., 2006); *Guay v. Burack*, 677 F.3d 10, 13 (1 Cir., 2012).  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)) (further internal quotation marks omitted).

## IV. Discussion

### A. Count I:  Challenge to HSBC as Trustee's Status as Mortgagee

In her complaint, Matt alleges that HSBC as Trustee cannot establish its status as mortgagee under pertinent Massachusetts statutory law, and therefore HSBC as Trustee cannot lawfully execute the power of sale contained in the mortgage.  *See*  Mass. Gen. L. ch. 244 § 14 (setting out procedures for exercising statutory power of sale) and Mass. Gen. L. ch. 183 § 21 (authorizing mortgagee to exercise "statutory power of sale" upon default).

Preliminarily, the Court notes that Matt asserts in Count I a claim for "Preliminary and Permanent Injunctive Relief" based on her contention that HSBC "did not receive a legally valid assignment of Ms. Matt's mortgage contractual rights from New Century." (#1 ¶ 73) "An injunction is not a cause of action, but a remedy." *Koufos v. U.S. Bank, N.A*, 12-CV-10743-DJC, __F.

Supp.2d__, __, 2013 WL 1189502, at *2 (D. Mass. Mar. 21, 2013).[4]
Furthermore, as one court in the district has observed: "'Massachusetts does not
require a mortgage holder to obtain judicial authorization to foreclose on a
mortgaged property.'" *Jepson v. HSBC Bank USA, Nat. Ass'n*, CIV.
12-12179-LTS, 2013 WL 639184, at *5 (D. Mass. Feb. 20, 2013) (quoting *U.S.
Bank Nat'l Assoc. v. Ibanez*, 458 Mass. 637, 646, 941 N.E.2d 40, 49 (2011)),
and "[a mortgagor] may not circumvent state law and impose such a
requirement by initiating judicial proceedings on their own," *id.* Nevertheless,
given that the Moving Defendants seek summary judgment on the merits of
Matt's contention that HSBC as Trustee cannot establish its status as mortgagee
and its entitlement to foreclose under Mass. Gen. L. c. 244 § 14, the Court
proceeds to consider the parties' arguments.

Matt mainly contends that HSBC as Trustee does not hold a valid
assignment of Matt's note or of Matt's mortgage; she suggests, among other
things, that it is "legally impossib[le]" for HSBC as Trustee to establish its status
as mortgagee because at the time of the purported assignment from New
Century to HSBC as Trustee on November 6, 2007, New Century had declared

---

[4]     Earlier Matt moved for a preliminary injunction (*see* #2), which the district court denied on September 30, 2011.

bankruptcy.  (*See* #1 ¶ 67; #126 at 6)

The Moving Defendants have moved for summary judgment, arguing that: 1) Matt lacks standing to challenge the validity of the assignment; and 2) that Matt cannot genuinely dispute that the mortgage was validly assigned, and the note lawfully transferred.  The law has evolved significantly since the time that Matt filed suit.  The First Circuit has recently rejected the Moving Defendants' first argument.  *See Culhane v. Aurora Loan Servs. of Nebraska*, 708 F.3d 282, 290 (1 Cir., 2013) ("[W]e hold only that Massachusetts mortgagors, under circumstances comparable to those in this case, have standing to challenge a mortgage assignment.").  Thus, the Court proceeds to consider the arguments about whether HSBC as Trustee can lawfully foreclose as mortgagee.

The Massachusetts Supreme Judicial Court has clarified that a "mortgagee" who seeks to foreclose under Mass. Gen. L. ch. 244 § 14 must hold both the mortgage and the underlying note at the time that the putative foreclosing entity provides statutory notice of foreclosure pursuant to Mass Gen. L. ch. 244 § 14.  *See Eaton v. Fed. Nat. Mortg. Ass'n*, 462 Mass. 569, 576-84, 969 N.E.2d 1118, 1124-31 (2012).  The *Eaton* decision recognized that "in Massachusetts a mortgage and the underlying note can be split," *id.* at 576, 969 N.E.2d at 1124, resulting in "the role of a 'bare' mortgagee as equitable trustee

for the note holder," *id.* at 578, 969 N.E.2d at 1126.   In other words, "a mortgage separated from the underlying debt that it is intended to secure is a mere technical interest." *Id.* at 576, 969 N.E.2d at 1124 (internal quotation marks and citations omitted).   Thus, because the mortgage does not necessarily follow the note, the mortgage may be independently assigned and held in trust for the note-holder.   *See Eaton*, 462 Mass. at 576-77, 969 N.E.2d at 1125 (citing *U.S. Bank Nat'l Assoc. v. Ibanez,* 458 Mass. 637, 652, 941 N.E.2d 40, 54 (2011))   ("the holder of the mortgage holds the mortgage in trust for the purchaser of the note").   *See also Juárez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 n.6 (1 Cir., 2013).   Post-*Eaton*, a foreclosing entity need only hold both the note and the mortgage at the time that the mandatory notice of sale has been given.   *Eaton,* 462 Mass. at 588-89, 969 N.E.2d at 1133.[5]   The *Eaton* decision further clarified that the foreclosing mortgagee need not "have physical possession of the mortgage note in order to effect a valid foreclosure," but that "one who, although not the note holder himself, acts as the authorized

---

[5]
       The *Eaton* decision applies prospectively "only to mortgage foreclosure sales for which the mandatory notice of sale has been given after the date of [the *Eaton*] opinion." *Eaton v. Fed. Nat. Mortg. Ass'n*, 462 Mass. 569, 589, 969 N.E.2d 1118, 1133 (2012)(footnote omitted).

       The record does not show that HSBC as Trustee has yet published the mandatory notice of foreclosure sale required under statute, and under *Eaton* HSBC as Trustee need only be able to assert its status as both note-holder and as assignee of the mortgage at the time that it publishes the required statutory notice.   In any event, for reasons set out *infra*, the Court concludes that no genuine dispute of fact exists on HSBC's status as note-holder.

agent of the note holder," may effect a valid foreclosure.  *Id.* at 586, 969 N.E.2d at 1131.  *See also Culhane*, 708 F.3d at 292 ("In Massachusetts, the note and the mortgage need not be held by the same entity.  The two instruments exist on separate planes, and the transfer of the note does not automatically transfer the mortgage.").

With this background in place, the Court turns to the arguments.  HSBC contends that it is both the current holder of the note and that it holds a valid assignment of the mortgage.  The Court considers the arguments separately.

### 1. Challenge to Validity of Mortgage Assignment to HSBC as Trustee

HSBC as Trustee asserts its status as assignee of the mortgage by dint of two assignments.  In the first assignment, dated April 6, 2005, Northeast assigned the mortgage and "all beneficial interest under that certain mortgage" in writing to New Century. (#117 ¶¶ 3-4; *see also* #118, Exh. 4)  The assignment was recorded in the Norfolk County Registry of Deeds on December 19, 2006.  (#127 ¶ 3; *see also* #118, Exh. 4)  New Century subsequently purported to assign both the mortgage and the note to HSBC as Trustee on November 6, 2007. (#117 ¶ 5; *see also* #118, Exh. 6) This subsequent assignment was recorded in the Norfolk County Registry of Deeds on about November 16, 2007.  (#127 ¶ 5)

Facially, the two assignments suffice to establish that HSBC as Trustee was validly assigned the mortgage.  Under Massachusetts law, a foreclosing entity could establish title via "'a single assignment from the record holder of the mortgage.'" *Jepson,* 2013 WL 639184, at *6 (quoting *Ibanez*, 458 Mass. at 651, 941 N.E.2d at 53).  As noted, under Massachusetts law, the note and the mortgage may be split, and need only be held by the same entity at the time of publishing notice of foreclosure.  Whatever the travel of the underlying note, New Century was the record holder of the mortgage until it executed the written assignment on November 6, 2007.  As such, under Massachusetts law, New Century held only bare legal title and held "the mortgage in trust for the purchaser of the note." *Ibanez,* 458 Mass. at 652, 941 N.E.2d at 53-54.  Under Massachusetts law as stated in *Ibanez*, "a valid written assignment must have taken place before foreclosure proceedings began." *Juárez,* 708 F.3d at 279.  In this case, HSBC as Trustee has presented a written assignment executed before foreclosure proceedings began and duly recorded.

Matt nevertheless seeks to challenge the validity of the second assignment on two grounds:  first, she contends that the assignment was invalid because New Century was in bankruptcy at the time that it purported to assign the mortgage.  (*See* # 126 at 6)  Second, she appears to argue that because the

mortgage was purportedly conveyed into a securitized trust in 2005, New Century had nothing to assign in 2007.[6]  Relatedly, she contends that there is no evidence that the mortgage was indeed conveyed into the Trust by the closing date of the trust, in violation of the trust's pooling and servicing agreement.  The Court finds these arguments unpersuasive for the following reasons.

### a. New Century's Bankruptcy

On April 2, 2007, New Century filed for Chapter 11 bankruptcy relief within the State of Delaware.  (#118, Exh. 7 at 2)  Thus, New Century was in bankruptcy at the time that it purported to assign the mortgage to HSBC as Trustee on November 6, 2007.  As a general matter, "bankruptcy law allows a debtor in possession to continue operating in the normal course of business."  *Juárez*, 708 F.3d at 282.  Thus, as long as the assignment in question was executed with leave of the bankruptcy court or in compliance with bankruptcy law, there is nothing necessarily suspect about the assignment.

Matt suggests first that the assignment was not made with leave of the bankruptcy court:  she notes that the assignment was executed not by New

---

[6]

  As discussed *infra* at section IV.A.2., this argument really concerns New Century's purported "assignment" of the note in the November 6, 2007 assignment, which the Court agrees is problematic, but ultimately immaterial.

Century, but by Countrywide Home Loans, acting under a limited power of attorney.   And Matt contends that although the bankruptcy court docket shows that the bankruptcy court granted Countrywide a limited power of attorney (POA), the authority granted in the limited POA pertained to 311 loans for which Countrywide held a senior lien--loans that did not include the Matt loan. (*See* #126 at 11)

The Court has examined the bankruptcy proceedings.  While it is true that Countrywide sought and was granted a limited POA with respect to these 311 loans in which it owned an interest, Countrywide also later sought and was granted authority to make assignments regarding a class of "loans and mortgages originated by the Debtors [New Century] and . . . sold to a third party and serviced by Countrywide, and are currently in default."  *In re: New Century TRS Holdings, Inc.*, No. 07-10416-KJC, Docket No. 2183-1.[7] Countrywide also certified that these loans were "presently recorded in the Debtors' name" and that "Debtors only have bare legal title to, and no equitable interest in, the Defaulted Loans."  *Id.* at 3.  Countrywide and New Century thus entered into a stipulation modifying the automatic stay "to the extent necessary

---

[7]

      Contrary to Matt's representation that docket entry number 2183 in the bankruptcy court "is merely an Attorney Certification of the content of Document 669," (#126 at 11 n.17), the document contains the additional stipulation at issue here, which was  later approved by the bankruptcy court.

to permit Countrywide to exercise the Powers granted in the Limited POA to foreclose on the Defaulted Loans." *Id.* at 4. That limited POA, referenced in the stipulation, granted Countrywide the authority, among other things, "[t]o execute . . . assignments of deed of trust/mortgage and other recorded instruments." *Id.*, Exh. 1. On August 8, 2007, the Delaware bankruptcy court entered an order approving the stipulation between New Century and Countrywide Home Loans, and allowing the use of the limited POA.

It is undisputed that Countrywide was the loan servicer for the Trust into which the Matt mortgage loan was conveyed. And Matt herself argues that New Century held no beneficial interest in the Matt mortgage loan by 2007. Thus, the Matt mortgage loan (by Matt's own lights) would fall into the class of loans for which New Century held "bare legal title" in the form of a recorded mortgage, and for which Countrywide was authorized, both by dint of the POA and by leave of the bankruptcy court, to execute assignments. As the First Circuit recently observed, "Massachusetts law makes pellucid that the mortgage and the note are separate instruments; when held by separate parties, the mortgagee holds a bare legal interest and the noteholder enjoys the beneficial interest. The mortgagee need not possess any scintilla of a beneficial interest in order to hold the mortgage." *Culhane*, 708 F.3d at 293 (internal citation and

16

footnote omitted).  Thus, New Century, in its "role as mortgagee of record," *id.*, could validly assign the mortgage even during bankruptcy proceedings.  *Cf. New Century Mortg. Corp. v. Braxton*, No. 09 MISC 393485, 2010 WL 59277, at *5 (Mass. Land Court Jan. 11, 2010)   (noting that, "[l]ooking past the confusion and inconsistencies created by the unrecorded instruments," if putative mortgagee had established that New Century assignments were made with leave of the bankruptcy court, the "record chain" of assignments could have sufficed to establish that putative mortgagee held the subject mortgage). The Court thus rejects the argument that New Century's bankruptcy invalidated the mortgage assignment at issue.

> b. Challenge to Validity of Assignment under Terms of Trust

Matt next contends that the second assignment is invalid because it violated the terms of the Trust's Pooling and Servicing  Agreement.  Because this contention is related to Matt's challenge to HSBC as Trustee's status as current noteholder, the Court considers the arguments together in the following section.

> *2. Challenge to HSBC as Trustee's Status as Noteholder/*
> *Mortgage Holder: Violations of the Pooling and Servicing Agreement*

The Moving Defendants assert that New Century sold its beneficial

interest in the mortgage note for deposit into the ACE Securities Corp. Home Equity Loan Trust Series 2005-HE4 Asset Backed Pass Through Certificates ("Trust") pursuant to a Pooling and Service Agreement ("PSA").  (*See* #117 ¶ 12)  The PSA operates as the governing document for the Trust.  Within the PSA, the closing date for depositing mortgage notes is listed as "on or about June 29, 2005"; however, the PSA leaves the trust open to acquire additional mortgage notes for a time period "up to and including September 27, 2005" under what is termed the "Pre-Funding Period." (#117 ¶ 12; #7, Exh. 21A, "PSA" at s-1 and s-2).

The Moving Defendants have produced evidence that Matt's mortgage loan was deposited into the Trust, that it is listed at line 4893 on the Mortgage Loan Schedule and that it is identifiable by name, address, and terms of the note. (#117 ¶ 12; *see also* #118, Exh. 5) Matt essentially argues that the second mortgage assignment is invalid because there is no evidence that the Matt mortgage was deposited into the Trust before its Pre-Funding Period cut-off date, September 27, 2005, and that lack of such evidence renders the second assignment invalid because it violates the terms of the Trust.  It is true, as best the Court can tell, that the best evidence that the Moving Defendants offer on this point is the Affidavit from Timothy P.F. Crowley that, "on information and

belief," the Matt loan was deposited into the Trust by the close of the Trust's Pre-Funding Period, September 27, 2005.  (*See* #118, Exh. 5 ¶¶ 4-5)  But a challenge to the mortgage assignment on this ground fails.  As it concerns the assignment of the *mortgage*, it is unnecessary for HSBC as Trustee to trace the intermediate unrecorded transfers of the mortgage note in light of the clear path of the recorded mortgage assignments.  *Cf. In re Almeida*, 417 B.R. 140, 149-150 (D. Mass. 2009) (rejecting argument that direct assignment from loan originator to pool trustee, bypassing depositor, is invalid as violative of the Trust's governing documents rendering the direct assignment invalid).  And, as noted, the mortgage and the note can proceed on different planes, as long as they are held by the same entity at the time of foreclosure.

To the extent that Matt challenges HSBC as Trustee's status as note-holder on the grounds that the transfer of the note into the Trust failed to comply with the Trust governing documents, HSBC as Trustee has produced uncontroverted evidence that it currently holds the note:  it has produced a copy of the note endorsed by New Century "without recourse."  (*See* #119, Exh. B) Matt does not controvert this fact.  (*See* #127 ¶ 6) The Moving Defendants have also produced evidence that supports their contention that the Matt loan was deposited into the Trust.  Again, Matt does not genuinely dispute this evidence.

Instead, Matt challenges the timing of the note's deposit into the Trust, which she contends took place after the cut-off date provided by the Trust's governing documents:  in support she notes that the transfer of the underlying promissory note "purport[edly] took place [i]n November 06, 2007." (*See* #127 ¶ 12)  It is true that the assignment dated November 6, 2007 purports to assign "without recourse" the "mortgage *and the note*," (#117 ¶ 5; *see also* #118, Exh. 6 (emphasis added).  In this regard, Matt is fundamentally correct in stating that by November 6, 2007, New Century no longer owned the beneficial interest and thus could not transfer the note.  But even if the November 6, 2007 purported transfer *of the note* was a nullity,[8] post-*Eaton*, it is sufficient for HSBC as Trustee to establish that it *currently* holds the note.  In this regard, while HSBC as Trustee cannot rely on the November 6, 2007 assignment to establish its status as the current note holder, Matt has not genuinely disputed the other evidence in the record establishing HSBC as Trustee's status as the current note holder.

For all the above reasons, the Court concludes that Matt has not established a genuine issue of material fact sufficient to challenge HSBC as

---

[8]    In the Court's view, the assignment sought to be over-inclusive: as *Eaton* pointed out, the Massachusetts "recording system has never required mortgage notes to be recorded." *Eaton v. Fed. Nat. Mortg. Ass'n*, 462 Mass. 569, 588, 969 N.E.2d 1118, 1133 (2012).

Trustee's status as mortgagee, and that summary judgment is warranted on Count I.

### B. Claims Related to Original Financing of the Mortgage Loan and Attempts at Modification of the Loan

The plaintiff raises a number of claims arising out of the loan origination process.  In addition, she raises several claims related to her later attempt to modify the terms of the loan after she had defaulted on the loan.  Finally, she asserts claims premised on the theory that HSBC, Bank of America and Countrywide worked in concert with Northeast (the loan originator) and New Century in order to induce the plaintiff into undertaking the mortgage and note via a "bait and switch" ploy with the subsequent intent to wrongfully collect and convert her monthly loan payments and, ultimately, force an illegal foreclosure proceeding.  For ease of exposition, the Court organizes the discussion around these three categories of claims: those arising out of the loan origination process; those arising out of the attempts to modify the loan; and those based on a conspiracy theory.

*1. Claims based on initial financing of loan/loan origination:*
*Count IV (Violation of Chapter 93A),*
*Count V (Rescission by Way of Recoupment under Mass. Gen. L. c. 140D),*
*Count VI (Breach of Contract), Count VII (Intentional Misrepresentation)*

Matt has alleged the following facts as a basis for four claims based

essentially on Northeast's purported unlawful conduct during the origination of Matt's loan.  At or around April 6, 2005, Matt's home was valued at greater than $750,000 and encumbered no debt or mortgage. (#1 ¶ 27)  On March 18, 2005, when Matt originally sought to obtain a mortgage loan from Northeast, Northeast provided Matt a Truth-in-Lending Act ("TILA") disclosure statement that indicated that the mortgage loan could bear an annual percentage rate ("APR") of 8.158% and an initial monthly payment of $1,329.26. (#117 ¶ 1; #127 ¶ 1; *see also* #119, Exh. A) Thereafter, on April 6, 2005, Matt closed on the mortgage loan with Northeast.  Matt executed an adjustable rate promissory note, which provided for an initial monthly payment in the amount of $1,429.37 and an interest rate of 7.725%.  (#117 ¶ 2).  The TILA disclosure statement provided to Matt at the closing also indicated that the initial monthly payment would be $1,429.37 and it informed Matt of the 10.528% APR.  (*Id.*) Matt denies in her Statement of Material Facts that she received the TILA statement at the closing; she does not however, controvert the statement by pointing to "page references to affidavits, depositions and other documentation."   Mass. Dist. Ct. Loc. R. 56.1  The Court thus deems the fact undisputed.

In her complaint, Matt alleges that during the signing of the documents,

these changes were never explained to her. (#1 ¶ 29)  Matt essentially contends that the original TILA disclosure promised an 8.158% interest rate and required monthly payments of $1,329.26.  (#1 ¶ 28)  Based on the facts recited above, Matt asserts several claims.

a. Count IV: Violation of Chapter 93A

Matt asserts a claim of violation ch. 93A, purportedly against "all Defendants."  She contends, among other things, that Northeast, the loan originator, employed a "bait and switch" strategy by offering Matt a loan on more favorable terms prior to closing and then offering a different mortgage loan "product" at closing.  (#1 ¶ 151a.)  She contends that Northeast originally offered more favorable mortgage terms in an effort to induce Matt to close on the loan (#1 ¶ 151b.), and that Northeast entered into a loan with Matt "on terms that were unfair and deceptive in light of [various] hidden advantages to Northeast."  (#1 ¶ 151c.)

The Moving Defendants move for summary judgment on this claim on the grounds that Matt failed to serve a demand letter on the Moving Defendants and that Matt cannot establish that the Moving Defendants committed any unfair or deceptive acts based on the facts asserted.

The record establishes (and Matt does not dispute) that Matt failed to

23

serve a demand letter on any of the Moving Defendants.  This "statutory notice requirement is not merely a procedural nicety, but, rather, 'a prerequisite to suit.'"  *Rodi v. S. New Eng. Sch. of Law*, 389 F.3d 5, 19 (1 Cir., 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 368 Mass. 812, 813, 333 N.E.2d 202, 204 (1975)).  In response, Matt contends that the requirements of the demand letter do not apply to the Moving Defendants for two reasons:  first, because she has asserted her chapter 93A claim defensively against imminent foreclosure; and second, because HSBC does not maintain a place of business or keep any assets within the Commonwealth.  (*See* #1 ¶ 155) The First Circuit has rejected both of these theories.  *See McKenna v. Wells Fargo Bank, N.A.*, 693 F.3d 207,  217-218 (1 Cir., 2012).[9]  *See also Koufos*, __F. Supp.2d at __, 2013 WL 1189502, at *6.

Finally, all the factual allegations in this count concern Northeast, and not the Moving Defendants.  To the extent that Matt asserts that the Moving Defendants conspired with Northeast to commit the underlying acts, the Court rejects that claim in section IV.B.3., *infra*.  Summary judgment is therefore

---

[9] Plaintiff's counsel was counsel on the *McKenna* case, which was decided on August 16, 2012, three months before plaintiff's counsel filed the Opposition to the Moving Defendants' motion for summary judgment on November 20, 2012.  Plaintiff's counsel was obliged to bring this authority, of which he was aware, to the Court's attention.  His failure to do so appears to be a violation of Rule 11(b)(2), Fed. R. Civ. P.

warranted on Count IV.

   b. Count V (Rescission by Way of Recoupment, under the Massachusetts
Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. L. ch. 140D)

Again, although the allegations in this Count arise out of the loan origination, Matt purports to assert her claim against all defendants.  Matt seeks to rescind her mortgage contract pursuant to the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. L. ch. 140D.  As a basis for this claim, Matt alleges that Northeast did not provide her at closing with the required copies of the Notice of the Right to Cancel which would have disclosed Matt's right to rescind the mortgage contract within a three-day window, commencing on the date of the loan's consummation.  *See* Mass. Gen. L. ch. 140D § 10(a).  The Moving Defendants move for summary judgment on the ground that the claim is time-barred.

The First Circuit has addressed the timing requirements under the MCCCDA as follows:

> Under section 10 of the MCCCDA, a borrower who mortgages her 'principal dwelling' as part of a consumer credit transaction may rescind the transaction for up to three days.  Mass. Gen. Laws ch. 140D, § 10(a). However, if the creditor does not provide the borrower with the required information and rescission forms, then the right of rescission extends until the required documents are provided (although no longer than four

years).  *Id.* § 10(f).

*McKenna*, 693 F.3d at 215.

Matt admits that she received the required notices "within a couple days of the closing of the Mortgage Loan."  (*See* #127 ¶ 19) Thus, the right of rescission expired three days after Matt admittedly received the notices.  In any event, the loan was consummated on April 6, 2005, and the right of rescission would have expired four years later, in April 2009, over one year before Matt filed suit.  Because the claim is time-barred, summary judgment is warranted.

c. Count VI (Breach of Contract)

Matt alleges a claim of breach of contract against several defendants, including HSBC and Ace Securities, two of the Moving Defendants.  She asserts that "[t]o the extent that [Northeast] offered terms to [Matt] prior to closing," (#1 ¶ 191), Northeast formed a contract with Matt, and subsequently breached that contract by "delivering different terms at closing that the ones originally promised," (*id.* ¶ 193)

The Moving Defendants move for summary judgment on the grounds that Matt has offered no viable theory under which the Moving Defendants can be held liable for Northeast's alleged breach.  Alternatively, they argue that Matt cannot establish a breach of contract.  The plaintiff's only rejoinder is to reaffirm

her allegations that the Moving Defendants engaged in a civil conspiracy.  (*See* #126 at 15)  In addition, the plaintiff (in a two-sentence response) has made no legal argument and has pointed to no evidentiary material raising a genuine issue of fact anent the Moving Defendant's arguments that no contract was formed based on the initial TILA disclosure statement dated March 18, 2005.

At the summary judgment stage, a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Summary judgment is therefore warranted on this basis alone.  In addition, the Court agrees, for the reasons stated in section IV.B.3. *infra*, that Matt has not advanced a theory under which the Moving Defendants can be held accountable for the actions of Northeast.

Summary judgment in favor of HSBC is also warranted on Count X, which alleges a breach of the covenant of good faith and fair dealing.  This count is premised on the existence of a contract arising out of the terms that Northeast offered to Matt "prior to closing."  (#1 ¶ 229) For the reasons just stated, Matt has failed to raise a genuine issue of material fact on the existence of an enforceable underlying contract, and so the predicate claim must fail.  *See FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 100 (1 Cir., 2009) (noting

that the "scope of the covenant is only as broad as the contract that governs the particular relationship") (internal quotation marks, alteration and citation omitted).

### d. Count VII (Intentional Misrepresentation)

Matt alleges that Northeast made intentional misrepresentations to Matt during the loan origination; she alleges that Northeast, among other things, intentionally misrepresented the terms of the loan to induce Matt to enter the loan, and then provided a loan at closing that included significantly different terms.  (#1 ¶ 199)

The Moving Defendants move for summary judgment on the grounds that they cannot be held accountable for any of Northeast's purported misrepresentations.  (*See* #116 at 13)   Other than reiterating her civil conspiracy theory, Matt offers no persuasive counter-argument or evidence.  For this reason, the Court concludes that summary judgment in favor of the Moving Defendants on Count VII.  *Cf. Cazales v. HSBC Bank, N.A.* No. 12-10263-RGS, 2012 WL 1969320, at *2 (D. Mass. June 1, 2012) (mortgagor failed to allege "any plausible basis on which HSBC could be held liable for the torts of Franklin Bank, the predecessor mortgagee").

### 2. Claims Based on Modification Offers

In August of 2005, Countrywide Home Loans ("Countrywide") began servicing Matt's loan.   In October 2005, Matt defaulted on her loan by failing to make her monthly payment.  (#117 ¶ 8; #127 ¶ 8) After Matt brought her loan current in January 2007, Matt again defaulted in April 2007.  (*Id.*)   In about February 2007, Matt sought to refinance her loan with Countrywide's Full Spectrum Lending Division.   On February 28, 2008, Countrywide's Full Spectrum Lending Division provided Matt with a proposed refinancing plan. (#117 ¶ 8; #119, Exh. F)   Matt chose not to refinance with the proffered modification terms.  (#118, Exh. 1, "Matt Dep." 56:23-57:1)   Instead, Matt reinstated her loan by making a lump sum payment of $34,898.35. (# 117 ¶ 8; #127 ¶ 8; #118, Exh. 1, "Matt Dep." 64:13-65:7; #119, Exh. G).  Matt again defaulted in May 2008, and has not made a payment on her loan since August 2008.  (#117 ¶ 9; #127 ¶ 9) Matt does not dispute these basic facts.

On June 5, 2009, Bank of America (successor to Countrywide) advised Matt that a loan modification was approved:  the loan modification offered a modified monthly payment of $2,757.96 and an interest rate of 9.375%, and stated that the agreement would bring the loan current.   Bank of America advised that the loan modification would go into effect provided that the associated documents were signed and returned.  (#117 ¶ 10; # 119, Exh. H)

Matt declined to agree to the modification:  she stated that she believed that Bank of America could not establish ownership of the Mortgage Loan, and that the modification offer should have contained an interest rate of 6.99% based on her "communications from time to time with BOA."  (#117 ¶ 10; #127 ¶ 10)  On September 14, 2009, Bank of America notified Matt of its intention to foreclose on the property unless a payment of $40,214.27 was made to cure the default. (#117 ¶ 11; #127 ¶ 11; #119, Exh. I)

Based on this sequence of events, Matt asserts in Count VIII a claim of intentional misrepresentation against Countrywide (now Bank of America). Matt alleges that Countrywide "made statements intended to induce Ms. Matt [to] believe that Countrywide was in fact seriously considering Ms. Matt's request for help with her mortgage."  (#1 ¶ 204) Matt alleges that Countrywide's false statements concerning its intent "to modify Ms. Matt's loan," induced the plaintiff to liquidate her life savings, and that, Countrywide was "simultaneously instructing its counsel . . . to eviscerate Ms. Matt's interest in her residence." (#1 ¶¶ 205-06)

A plaintiff asserting a claim of intentional misrepresentation under Massachusetts law must show "a false statement of material fact made to induce the plaintiff to act and reasonably relied upon by him to his detriment." *Rodi*,

389 F.3d at 13.   The Moving Defendants move for summary judgment on the ground that Matt has failed to establish the existence of a false statement of material fact.   The Court agrees that the summary judgment record does not support a claim for intentional representation.   The record establishes that Matt herself chose not to refinance her loan in February 2007, but instead brought her loan current.   Likewise, Matt admits that she stated that she did not pursue the second loan modification offered by Bank of America on June 5, 2009 because she believed that Bank of America would be unable to establish its ownership of the note and mortgage.   (*See* #127 ¶ 23) Matt has not identified the existence of a false statement of material fact: Matt does not dispute that Countrywide and Bank of America in fact offered loan modifications, although perhaps not on terms that Matt liked.   Summary judgment is warranted on this count.

*3. Remaining claims*[10]

---

[10]

Counts III and IX appear to represent Matt's effort to offer a theory of liability under which the Moving Defendants might be held accountable for the actions of Northeast during the loan origination process.   The Court notes that Judge Saris dismissed the Civil Rico count (Count II), and so an enterprise theory of liability is not viable.

### a. Count III (*Respondeat Superior*)

In Count III of her complaint, Matt contends that Bank of America was "hired, directed, or controlled" by HSBC As Trustee, transferring liability to HSBC for Bank of America's wrongful collections and conversions.  (#1 ¶ 146) The Moving Defendants correctly point out that respondeat superior is a doctrine that subjects an employer to liability for the torts of its employees.  (*See* #116 at 10 (citing *Roggio v. City of Gardner*, No. 10-40076-FDS, 2011 WL 1303141, at *5 (D. Mass. Mar. 30, 2011)).  The Moving Defendants argue that summary judgment is warranted because the defendants are separate entities, and there is no evidence that they employ one another.  In response, Matt does not point to any evidence to dispute this fact, but merely re-asserts the allegations in the complaint.  (*See* # 126 at 15).  Summary judgment is therefore warranted on Count III in favor of the Moving Defendants.  *See Braga v. Hodgson*, 605 F.3d 58, 60 (1st Cir. 2010) (citing *Anderson*, 477 U.S. at 256).

### b. Count IX: Civil Conspiracy

Finally, in Count IX, Matt asserts a claim of civil conspiracy by alleging that HSBC, Bank of America and Countrywide worked in concert with New Century and Northeast Mortgage Company to induce the plaintiff to undertake the

mortgage loan in question, to seek wrongful collections and conversions of the plaintiff's monthly payments, and to illegally foreclose on the property. (#1 ¶¶ 221-22)  Matt contends that it was the combination of acts performed by each of the defendants that coerced the plaintiff into her injury (the wrongful collection, conversion, and subsequent foreclosure), which would not have occurred based solely on the individual actions of any single defendant. (#1 ¶¶ 218-219)

In Massachusetts, two forms of civil conspiracy are recognized. The first is a form known as a "true conspiracy," where two or more parties, "'acting in unison, had some power of coercion over [plaintiffs] that they would not have had if acting independently.'"  *Inman v. Siciliano*, No. 10-10202-FDS, 2012 WL 1980408, at *16 (D. Mass. May 31, 2012) (quoting *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1563 (1 Cir., 1994) ("*Aetna*")).  Such a "limited cause of action" requires that the power of coercion also be "peculiar" in nature. *Aetna*, 43 F.3d at 1563.

The second form of civil conspiracy is "more akin to a theory of common law joint liability in tort." *Aetna*, 43 F.3d at 1564.  "For liability to attach on this basis, there must be, first, a common design or an agreement, although not necessarily express, between two or more persons to do a wrongful act and,

second, proof of some tortious act in furtherance of the agreement." *Id.* at 1564.

The Moving Defendants move for summary judgment on the ground that Matt cannot establish the existence of any agreement between the Moving Defendants and any other entity to commit a wrongful act. They also assert the absence of any evidence to establish any wrongful act. Matt, in her statement of material facts, admits as much. (*See* #127 ¶¶ 15-17) In her opposition to the motion for summary judgment, Matt simply refers to her predicate argument (which the Court has rejected *supra* at section IV.A.) that HSBC as Trustee cannot establish its status as mortgagee, and reiterates the allegations in her complaint. This proffer is facially inadequate to stave off summary judgment on the conspiracy claim.

### c. Count X: Unjust Enrichment

Lastly, in Count XI, Matt claims that all of the defendants were unjustly enriched due to the predatory loan and wrongful acts subsequent to inducing her to sign. (#1 ¶ 232) A claim of unjust enrichment under Massachusetts law requires that a plaintiff "show that the defendant received, was aware of, and accepted or retained a benefit conferred by the plaintiff 'under circumstances which make such acceptance or retention inequitable.'" *Lass v. Bank of America, N.A.*, 695 F.3d 129, 140 (1 Cir., 2012) (quoting *Vieira v. First Am. Title Ins. Co.*,

668 F. Supp.2d 282, 294 (D. Mass. 2009)).   In other words, under Massachusetts law, "[u]njust enrichment requires a plaintiff to prove that 1) she conferred a benefit upon the defendant, 2) the defendant accepted the benefit and 3) the defendant's retention of the benefit would be inequitable without payment for its value." *Reed v. Zipcar, Inc.*, 883 F. Supp.2d 329, 334 (D. Mass. 2012) (citing *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1 Cir., 2009) (interpreting Massachusetts law), *aff'd.*, ___ Fed. App'x ___, 2013 WL 3744090 (1 Cir., July 17, 2013).

The Moving Defendants move for summary judgment on the ground that Matt has not conferred a benefit on the Moving Defendants to which they are not entitled.  (#116 at 19-20)  Rather, they point out that Matt has been living in the property since August 2008 without having made any loan mortgage payments.   In response, Matt simply reiterates her argument that HSBC as Trustee cannot establish its ownership of Matt's note and mortgage.  (*See* #126 at 18)   Because the Court has already rejected the predicate to Matt's argument–that HSBC as Trustee is not the mortgagee–the claim for unjust enrichment fails.

## V. Recommendation

For all the above reasons, I RECOMMEND that Certain Defendants' Motion

for Summary Judgment (#115) be ALLOWED.

## VI. Review by the District Judge

The parties are hereby advised that any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review.  *See Keating v. Secretary of Health and Human Services*, 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

*/s/ Robert B. Collings*

ROBERT B. COLLINGS
United States Magistrate Judge

August 27, 2013.

36